IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

James R. Goff,

      Petitioner,

    v.                          Case No. 1:02-cv-307

Margaret Bagley, Warden,

      Respondent.

## OPINION AND ORDER

This is an action for habeas corpus relief filed pursuant to 28 U.S.C. §2254 by petitioner, James R. Goff.  The petition in this case was filed on May 1, 2002.  In an order filed on August 19, 2003, this court determined that six of petitioner's twenty-five claims were procedurally defaulted, those being grounds for relief numbers 3, 16, 17 (except sub-parts A, B, C, and I), 20, 21 (as to allegations that prosecutors enjoy unfettered discretion and that prosecutors are not required to prove absence of mitigating factors) and 24.  On September 9, 2004, this court issued a supplemental order determining that additional claims were procedurally defaulted, those being grounds for relief numbers 13 (sub-parts G, H, I, and L), 9, 10-12, 19, 20, 23, and 25 (except sub-part D).  Some additional discovery was conducted by the parties, including the completion of the depositions of petitioner's trial attorneys.  The deposition transcripts were filed with the court as docket numbers 34 and 35.  The record before the court is hereby expanded to include those depositions. Additional transcript pages (filed as Doc. No. 30) were included in the record pursuant to an order issued on January 10, 2003.

This case is now before the court for a decision on the merits

of petitioner's remaining claims, those being grounds for relief
numbers 1, 2, 4 through 8, 13 (sub-parts A-F, J and K), 14, 15, 17
(subparts A, B, C, and I), 18, 21 (excluding the allegations of
unfettered prosecutorial discretion and failure to require
prosecutors to prove the absence of mitigating factors), 22 and 25
(sub-part D).

## I. Factual and Procedural History

On January 24, 1995, a grand jury empaneled in Clinton County,
Ohio, returned an indictment charging petitioner with two counts of
aggravated murder in violation of Ohio Rev. Code §2903.01(B), three
counts of aggravated burglary in violation of Ohio Rev. Code
§2911.11(A)(1)-(3), two counts of aggravated robbery in violation
of Ohio Rev. Code §2911.01(A)(1) and (2), and two counts of grand
theft with specifications in violation of Ohio Rev. Code
§2913.02(A)(1) and (4). Both counts of aggravated murder included
a death penalty specification under Ohio Rev. Code §2929.04(A)(7),
that is, that petitioner was the principal offender in an
aggravated murder which occurred while petitioner was committing,
attempting to commit, or fleeing immediately after committing
aggravated burglary (Count 1) and aggravated robbery (Count 2).

The facts involved in these offenses are set forth in *State v.
Goff*, 82 Ohio St.3d 123, 124-127, 694 N.E.2d 916 (1998):

> [Myrtle] Rutledge, an eighty-eight-year-old woman, was in
> the process of moving out of her old farmhouse and into
> a new doublewide trailer home that was built directly
> behind the farmhouse. Her daughter, Esther Crownover,
> had been helping her sort out items from the old house,
> in which she had lived for forty-seven years.
>
> Rutledge decided to purchase some new furniture for her
> new house, and on September 14, 1994, she and Crownover
> went to Butler Home Furnishings in Wilmington, Ohio.

2

After purchasing a new mattress, box springs, chair, ottoman, and sofa, Rutledge made arrangements for the furniture to be delivered the next day.

Butler Home Furnishings had employed appellant for furniture deliveries for about a year. Harold E. Butler, Jr., the son of the owner, would contact appellant when he had a delivery and then, depending on the item, would get another person to assist appellant with the delivery. Butler Furnishings had also used Manuel Jackson as a delivery person for the seven months prior to September 1994.

Appellant and Jackson were contacted to make the delivery to Rutledge on September 14, 1994. When appellant and Jackson arrived with the furniture, Rutledge directed them to put the new furniture in the new house. Since there was no bed frame in the new house, appellant asked whether Rutledge wanted them to obtain the frame from the old house and assemble the bed in the new house. After they indicated that they would not charge Rutledge any additional money for this service, Rutledge took them into the old house, up to the second floor, and pointed out the bed frame that was to be used with the new bedding. The old house was in a state of disarray from the ongoing moving process. Jackson thought he saw appellant "snooping" through Rutledge's belongings.

Appellant and Jackson disassembled the old bed, took the frame to the new house, and set up the new bed. While Jackson finished the assembly, appellant obtained Rutledge's signature on the delivery form.

Later that afternoon, Rodney Rutledge, the victim's son, arrived at his mother's house around 4:00 p.m. to mow the lawn. She showed him her new furnishings that had been delivered that day. When he left (around 5:30 p.m.), his mother's car was parked in the driveway next to the house.

On the night of September 15, Myrtle Rutledge spoke on the telephone to her sister (6:30-7:00 p.m.) and her sister-in-law (around 9:00 p.m.) concerning the upcoming family reunion on Saturday, September 17. On Friday, September 16, 1994, Rutledge's son drove past his mother's house six different times during the course of his employment. Each time his mother's car was not parked in the driveway next to the house. Rutledge's

3

sister also drove past the house and noticed the car was not there.

On Saturday morning, Crownover went to Rutledge's home to pick her up for the reunion. The car was not there, and when her mother did not answer the door, Crownover assumed that she had already left for the reunion. When she arrived at the reunion her mother was not there. She went back to her mother's house, entered, and went upstairs to her mother's bedroom. There she found her mother's battered and naked body lying on the floor of the bedroom. A pool of blood was on the bed, as well as the floor area. After ascertaining that there was no pulse, she tried using the phone to call the police, but there was no dial tone. She covered her mother with a blanket and drove to the police station.

The police and an ambulance were dispatched. Once it was determined that Rutledge was dead, the police secured the scene and began a criminal investigation. Deputy Sheriff Fred W. Moeller, the crime scene investigator, determined that the door to the victim's house had been forced open. Someone had apparently tried to enter the home through a window, because the window screen was lying on the ground outside the house, but entry was not made through the window. The phone wires on the outside of the house were cut.

No fingerprints were found in the bedroom. In Moeller's opinion, the room had been cleaned. Other fingerprint smudges were found in the house, but never matched. There was no evidence of blood anywhere else in the house except the bedroom. Denise K. Rankin, a serologist, identified a pubic hair found at the scene as being consistent with a pubic hair obtained from appellant after his arrest.

After Moeller left the scene to return to the police station, he was notified that the victim's car was found on North High Street in the city of Wilmington. He went to the scene, and the keys to the car were found on the floor on the driver's side. A pink towel was on the front seat of the car, and no prints were found anywhere on the car. Moeller believed that someone had wiped down the car.

The deputy coroner testified that Rutledge died from blunt and sharp trauma to the head, neck, shoulders, and

4

ankle.  Her death also resulted from blood loss due to
multiple stab wounds, one of which severed the carotid
artery.  The coroner was unable to determine the time of
death.

When appellant and Jackson left Rutledge's house after
delivering the furniture on September 15, they purchased
some crack cocaine and went to appellant's house to smoke
it.  Appellant later returned the truck to the furniture
store.

Jackson did not see appellant again until 1:00-1:30 a.m.
the following morning when he saw him running through an
alley.  Jackson later saw him on Grant Street.  Appellant
had changed his clothes from earlier in the day when they
had delivered the furniture.

Appellant asked Jackson whether he wanted to smoke some
crack, showing him what Jackson thought was about $80
worth of crack.  Jackson was with Tim Bart, and all three
proceeded to appellant's house.  After they smoked the
crack, which took a couple of hours, Bart suggested
stealing some meat to trade for more crack.  They were
going to walk to the store, when appellant indicated he
knew where there was a car they could use, but it was
stolen.  Appellant said the car was on North High Street.
Bart and Jackson opted not to use the stolen car, and
they walked to Bob and Carl's Meat Store.  Bart stole the
meat, and he and appellant "took off."

Jackson saw appellant around noon the next day, and
appellant asked him to tell anyone who asked, that he
(appellant) had been with Jackson from 9:00 p.m. on
September 15 until 3:00 a.m. on September 16.

Later, on September 17, Timothy Shaffer found appellant
playing pool at a game room in Wilmington.  Appellant,
Shaffer, and David Walls ended up at Shaffer's trailer,
where they smoked three to four "joints." All three left
the trailer and went to buy some crack.  After the
purchase, Shaffer and appellant went to appellant's house
to smoke the crack.  Appellant wanted Shaffer to sign a
note saying that he (Shaffer) helped in a crime committed
on September 15, but Shaffer refused to sign.  Appellant
went and stayed at Shaffer's trailer until September 21.

While staying with Shaffer, appellant talked with him
about Rutledge's death.  Appellant asked Shaffer what he

5

would do if he killed someone.  Appellant then told him
he stabbed a lady and bent the blade of the knife.  He
also choked her.  Appellant then told Shaffer he took her
car and left it in front of the Mulberry Hill Apartments.
After wiping the steering wheel, he drove the car to
North High Street, where he left it, and then bought
about $90 worth of crack and smoked it.  Appellant
admitted that he went to Rutledge's house to rob her.

On September 21, Shaffer saw a newspaper article about
the Rutledge murder and asked appellant to leave his
trailer.  About two weeks later, Shaffer received a
letter from appellant telling him that his (appellant's)
life was in Shaffer's hands and to not tell anyone.
Shaffer eventually called Colonel Tim Smith at the
sheriff's department, and turned over a pair of tennis
shoes and a laundry basket belonging to appellant.
Shaffer ultimately told Smith all of what appellant had
said about the murder.

Appellant was arrested on September 21, 1994 on a drug
charge.  During interrogation, appellant admitted that he
had a crack habit, that he bought crack whenever he
could, and that he would steal and trade items to buy
crack.  He indicated that he delivered furniture to the
Rutledge residence, but when questioned about the murder,
appellant asked for an attorney and questioning ceased.

The state also presented three inmates, Jerry Lee Price,
Danny Smith, and Keith Jones, to testify to various
statements appellant had made to them regarding the
Rutledge crime while incarcerated on the drug charge.
Smith's testimony was excluded, since he failed to
identify appellant in court; however, both Price and
Jones testified regarding the murder.

Jones's testimony was by far the most damaging.
Appellant told Jones that he had delivered furniture to
an old lady in her late 80's.  She had given appellant
some money when he put the new bed together and later
that night he went back to get the rest of the money he
saw she had.  Appellant entered through the kitchen and
found Rutledge in the bedroom.  Appellant told him that
Rutledge called him "Jimmy," so he "had to get rid of the
bitch."  Jones asked him questions concerning the crime
because Jones could not believe appellant could do such
a thing to an old woman.  Appellant asserted that she had
lived her life, and since she could send him to prison,

6

he had to kill her.  After he took the money and the car,
he went and bought crack.  Appellant ran into a friend
and they went and smoked it.  Appellant said he killed
her by himself, using a fishing tackle knife from his
house.  He told Jones they would never find the knife
because he got rid of it.  Jones wrote a letter to the
prosecutor's office, although he was not sure he believed
appellant, but that he (Jones) had an elderly mother and
could not think of something like that happening to her.

Following a jury trial in the Court of Common Pleas of Clinton
County, Ohio, on July 27, 1995, petitioner was found guilty as
charged on the charges of aggravated murder with specification, the
charges of aggravated burglary and aggravated robbery, and one of
the grand theft charges.  He was found not guilty of the second
theft charge and not guilty of the specifications in the two grand
theft charges.  A penalty phase hearing was held on August 10-11,
1995.  The jury recommended that petitioner be sentenced to death
on the two counts of aggravated murder.  The trial court conducted
its own independent weighing of the aggravating and mitigating
circumstances, found that the aggravating circumstances outweighed
the mitigating circumstances, and imposed the death penalty.

Petitioner pursued a direct appeal from his conviction and
sentence to the Twelfth District Court of Appeals for Clinton
County, Ohio.  *See State v. Goff*, No. CA95-09-026, 1997 WL 194898
(Ohio App. April 21, 1997).  That court affirmed the convictions
and sentences.  Petitioner then pursued an appeal to the Ohio
Supreme Court, and that court also affirmed the judgment of the
trial court.  *See State v. Goff*, 82 Ohio St.3d at 144.  A petition
for certiorari was denied by the United States Supreme Court.  *See
Goff v. Ohio*, 527 U.S. 1039 (1999).

On September 20, 1996, petitioner filed a petition for

7

postconviction relief in the Clinton County Common Pleas Court. The petition was dismissed on April 26, 2000, without an evidentiary hearing. On May 10, 2000, petitioner filed a motion for relief from judgment pursuant to Ohio Civ. R. 60(B)(5), alleging that he did not have an opportunity to address the state's motion to dismiss his postconviction petition, and that he was denied the opportunity to take depositions. On September 13, 2000, the trial court denied petitioner's motion for relief from judgment.

Petitioner filed appeals from these orders to the Twelfth District Court of Appeals for Clinton County, Ohio. In a decision rendered on March 5, 2001, the court of appeals affirmed the denial of the postconviction petition. *See State v. Goff*, No. CA2000-05-014, 2001 WL 208845 (Ohio App. March 5, 2001). Petitioner appealed that decision to the Ohio Supreme Court, which dismissed the appeal. *See State v. Goff*, 92 Ohio St.3d 1430, 749 N.E.2d 756 (2001). The court of appeals also affirmed the denial of the Rule 60(B) motion. *See State v. Goff*, No. CA2000-10-026, 2001 WL 649820 (Ohio App. June 11, 2001). The Ohio Supreme Court declined to accept jurisdiction on that appeal. *See State v. Goff*, 93 Ohio St.3d 1414, 754 N.E.2d 261 (2001).

On June 28, 2002, petitioner filed an application in the Twelfth District Court of Appeals for Clinton County, alleging ineffective assistance of appellate counsel before that court. On August 14, 2002, the court of appeals found that petitioner failed to establish good cause for filing his application more than ninety days after that court's judgment was journalized, as required by Ohio App.R. 26(B)(2)(b), and also denied the application on the

merits of petitioner's ineffective assistance claim. Petitioner filed an appeal from this decision to the Ohio Supreme Court. That court held that petitioner had failed to raise a genuine issue as to whether he was deprived of the effective assistance of counsel on appeal before the court of appeals, as required by Ohio App.R. 26(B)(5), and affirmed the judgment of the court of appeals. *See State v. Goff*, 98 Ohio St.3d 327, 784 N.E.2d 700 (2003).

## II. Standards for Habeas Review

The provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became effective prior to the filing of the instant petition, apply to this case. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Under the AEDPA, a writ of habeas corpus shall not issue unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §2254(d)(1), or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. §2254(d)(2). The provisions of §2254(d)(1) govern the review of legal error, whereas claims of factual error are subjected to the standard enunciated in §2254(d)(2). *Weaver v. Bowersox*, 241 F.3d 1024, 1029 (8th Cir. 2001).

Under §2254(d)(1), a state court decision is "contrary to" Supreme Court precedent if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court

9

decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct legal principle from the decisions of the Supreme Court but unreasonably applies that principle to the facts of the petitioner's case. *Id*. A federal habeas court may not find a state adjudication to be "unreasonable" simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. *Id*. at 411. Rather, a state court's application of federal law is unreasonable "only if reasonable jurists would find it so arbitrary, unsupported or offensive to existing precedent as to fall outside the realm of plausible credible outcomes." *Barker v. Yukins*, 199 F.3d 867, 872 (6th Cir. 1999).

Claims of error in making factual determinations are addressed under §2254(d)(2). Under that section, an application for habeas relief may not be granted unless the state court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." §2254(d)(2). In addition, 28 U.S.C. §2254(e)(1) provides that the findings of fact of a state court are presumed to be correct, and that the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.

### III. Petitioner's Claims

### A. First Ground for Relief

Petitioner's first ground for relief is as follows:

Petitioner Goff was denied the right to a fair trial in
violation of the Fifth, Sixth, Eighth, and Fourteenth
Amendments to the United States Constitution when the

10

trial judge refused to give a critical instruction that jurors consider a life sentence even if all twelve do not initially reject a recommendation of death.

Petitioner relies on *State v. Brooks*, 75 Ohio St.3d 148, 661 N.E.2d 1030 (1996). In that case, which was decided after petitioner's trial, the Ohio Supreme Court held that a jury need not rule out the death penalty before considering a life sentence, and that the jury should be instructed that a single juror could prevent the imposition of the death penalty. *Brooks*, 75 Ohio St.3d at 160-61. Petitioner argues that the trial court should have given the following jury instruction which was requested by defense counsel at the mitigation phase of the trial:

> If you are unable to agree unanimously that a death sentence is appropriate under this standard of proof, you are to proceed to consider which of the life sentence verdicts (recommendations) to return. You are not required to determine unanimously that the death sentence is inappropriate before you consider the life sentences.

*See* JA Vol. XV, p. 2450. The trial court declined to give the requested instruction, and instructed the jury as follows:

> [I]f you are not convinced by proof beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors, then you must choose one of the two life sentences.
>
> You shall recommend death only if you unanimously find by proof beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors. If you do not so find, you shall unanimously sign a verdict for either a sentence of life with parole eligibility after serving 20 full years of imprisonment or a sentence of life with parole eligibility after serving 30 full years of imprisonment. Verdict forms with these three options will be furnished to you.

JA Vol. XVI, p. 2716. Petitioner also argues that the trial court erred in refusing to give his requested instruction that it need

11

not unanimously agree on the existence of a mitigating factor before weighing that factor. *See* JA Vol. XV, p. 2442.

On direct appeal, petitioner raised as error the failure of the court to give his requested instruction.  He noted the fact that during deliberations, the jury asked the question, "Since we are deciding the verdict of two separate offenses will the sentences be served consecutively or concurrently?"  JA Vol. XVI, p. 2725.  Petitioner argued that this question indicated to the jurors may have recommended a life sentence if they had been told that they did not have to unanimously reject a death verdict before considering the life sentences.

The court of appeals stated that the jury's possible motives for asking the question were purely speculative.  *Goff*, 1997 WL 194898 *5.  The court noted that the instruction given by the court closely adhered to the language of Ohio Rev. Code §2929.03(D)(2)[1].  *Id*.  The court found that the instruction was not invalid under *Brooks*.

On further appeal, the Ohio Supreme Court held that the jury in this case was not given the erroneous instruction that served as the basis for reversal in *Brooks*.  *Goff*, 82 Ohio St.3d at 129.  The court noted that the jury was informed that the finding that the aggravating circumstances outweighed the mitigating factors must be

---

[1]Section 2929.03(D)(2) provides:

If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender.  Absent such a finding, the jury shall recommend that the offender be sentenced to life imprisonment with parole eligibility after serving twenty full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment.

unanimous, and that if it did not make the unanimous finding, one of the life verdicts must be returned. *Id*. The court stated that although it would have been preferable to give the instruction requested by petitioner, the substance of what the jury must determine under Ohio law was included in the charge given, and held that petitioner was not prejudiced by the failure to give the requested instruction. *Id*.

Petitioner also argued on direct appeal that the trial court erred in refusing to instruct the jury that it need not unanimously agree on the existence of a mitigating factor before weighing that factor. The court of appeals held that the instructions given by the trial court tracked the language of Ohio Rev. Code §2929.03(D)(1), which does not require unanimity regarding mitigating factors, and that the trial court properly declined to give the requested instruction. *Goff*, 1997 WL 194898 at *6. The Ohio Supreme Court noted that the jurors were never told that they had to make a unanimous finding on the individual factors before weighing them, and held that the trial court did not err in overruling petitioner's requested instruction. *Goff*, 82 Ohio St.3d at 129.

Under *Caldwell v. Mississippi*, 472 U.S. 320 (1985), a judge may not make misleading statements of law to the jury. In deciding whether an allegedly erroneous jury instruction deprived a defendant of his constitutional rights, the standard is whether instruction by itself so infected the entire trial that the resulting conviction violates due process. *Estelle v. McGuire*, 502 U.S. 62, 72-73 (1991). In reviewing an ambiguous instruction, courts inquire whether there is a reasonable likelihood that the

13

jury has applied the challenged instruction in a way that violates
the Constitution.  *Id*. at 71-72.  The mere fact that an instruction
was allegedly incorrect under state law is not a basis for habeas
relief.  *Id*.

Under *Mills v. Maryland*, 486 U.S. 367, 376 (1988) and *McKoy v.
North Carolina*, 494 U.S. 433, 444 (1990), it is impermissible to
instruct the jurors in a capital case that they must unanimously
agree on the presence of any mitigating factor before that factor
may be considered.  Under *Mills*, jury instructions that create "a
substantial probability that reasonable jurors ... well may [think]
they [are] precluded from considering any mitigating evidence
unless all 12 jurors agree[] on the existence of a particular such
circumstance" violate the principle that a sentencer may not be
precluded from giving effect to all mitigating evidence.  *Mills*,
486 U.S. at 375.  However, an instruction which does not require
unanimity as to a specific mitigating factor, but rather requires
unanimity only as to the results of the overall weighing of
mitigating and aggravating factors is permissible.  *Roe v. Baker*,
316 F.3d 557, 564 (6th Cir. 2002); *Williams v. Coyle*, 260 F.3d 684,
702 (6th Cir. 2001)(jury instruction which did not require unanimity
as to the existence of a mitigating circumstance, but only as to
the question of whether the aggravating circumstances as a whole
outweighed the mitigating circumstances as a whole, did not violate
*Mills*); *Scott v. Mitchell*, 209 F.3d 854, 875-76 (6th Cir. 2000).

In petitioner's case, the state courts held on direct appeal
that the instruction given by the trial court did not violate Ohio
law under *Brooks*.  Since the jury instruction given in this case
was not an erroneous statement of Ohio law, the state court

14

decisions are not contrary to or an unreasonable application of *Caldwell*. *See Williams*, 260 F.3d at 702.  The Constitution does not require an express "hold out" juror instruction that informs a jury of the consequences of its inability to reach a unanimous verdict on the death penalty. *See Coe v. Bell*, 161 F.3d 320, 339-40 (6th Cir. 1998).

The instructions given by the court contained no language which would suggest to the jurors that they had to unanimously reject the death penalty before considering the life sentence options.  The instructions given in this case closely mirror the Ohio pattern jury instructions discussed by the Sixth Circuit in *Henderson v. Collins*, 262 F.3d 615(6th Cir. 2001), where the court stated:

> [T]he pattern instructions reflect the statutory assumption that a jury will first consider whether the death penalty represents an appropriate punishment before considering either of the two life sentences.  Consistent with *Brooks*, *supra*, however, neither instruction explicitly requires the jury to rule out death before considering a life sentence.

*Id*. at 621-22.  The Sixth Circuit held that these pattern instructions, which suggest that the jurors can consider first whether the death penalty was appropriate, but do not require them to unanimously find that the aggravating factors outweighed the mitigating circumstances prior to considering a life sentence, comport with constitutional requirements.  *Id*. at 622.  *See also Roe*, 316 F.3d at 563-64.

The state courts also correctly held that the instructions given by the trial court in this case did not require the jurors to unanimously agree on the existence of a mitigating circumstance before they could consider that mitigating circumstance.  The trial

15

court's instruction required unanimity on the ultimate issue of whether the aggravating circumstances outweighed the mitigating factors. However, no language in the instructions given by the trial court created a substantial probability that the jurors could have believed that they were precluded from considering any mitigating evidence absent the agreement of all jurors. *See Coe*, 161 F.3d at 338 (distinguishing language requiring unanimity as to the results of the weighing process from instruction requiring unanimity as to the presence of a mitigating factor). The language requiring unanimity in this case is found in the paragraph discussing the weighing process. JA Vol. XVI, p. 2716. No mention of unanimity is found in the instructions on considering mitigating factors. JA Vol. XVI, p. 2714. *See Coe*, 161 F.3d at 338.

Petitioner relies on *Davis v. Mitchell*, 318 F.3d 682 (6th Cir. 2003), in which the Sixth Circuit held that the instructions given in that case were unconstitutional. However, *Davis* is not controlling here. In order to prevail in this habeas action, petitioner must show that the decisions of the state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. §2254(d)(1). *Davis* is not a Supreme Court case, and it was decided after the direct appeals in petitioner's case were concluded. In addition, the validity of *Davis* as precedent has been questioned to the extent that it is in conflict with the earlier Sixth Circuit decisions in *Coe*, *Roe*, and *Scott*, in which habeas relief was denied in cases involving similar jury instructions. *See Henderson v. Collins*, 184 Fed.Appx. 518, 2006 WL 1675074 at *5 fn. 9 (6th Cir. 2006)(noting that one panel

of the Sixth Circuit cannot overrule the decision of another panel); *Madrigal v. Bagley*, 276 F.Supp.2d 744, 785 (N.D.Ohio 2003).

Finally, the instructions in the instant case are readily distinguishable from those given in *Davis*. In *Davis*, the court charged to the jurors that if they found that the state failed to prove that the aggravating circumstances outweighed the mitigating factors, "then you will return your verdict reflecting your decision[.]... In this event you *will then proceed* to determine which of the two possible life imprisonment sentences to recommend to the Court." *Davis*, 318 F.3d at 685 (emphasis supplied). The court in *Davis* found that this language amounted to an impermissible "acquittal first" instruction. *Id.* at 6689-90. No such language is found in the instructions given in this case. Instead, the jury was told: "*If you do not so find* [that the aggravating circumstances outweigh the mitigating factors], you shall unanimously sign a verdict for" one of the life sentence options. (Emphasis supplied.). Under this language, the failure to find that the aggravating circumstances outweigh the mitigating factors could result not only from a unanimous decision, but also from the failure of the jurors to agree. There is no language in the instructions from which the jurors could reasonably conclude that they would not be free to consider the life options absent a unanimous rejection of the death penalty.

The court in *Davis* also noted the language of the verdict forms in that case. The form for acquittal of the death penalty reads: "We, the Jury in this case ... *do find* that the" aggravating circumstances are not sufficient to outweigh the mitigating factors. *Id.* at 690 (emphasis supplied). After reading this form,

17

the trial court in *Davis* again reminded the jury that "in order for you to reach a decision all twelve of you must be in agreement." *Id*. at 690-91.  The court in *Davis* cited this language as support for its finding that the jury would have concluded that a unanimous rejection of the death penalty was required.  In contrast, the life verdicts in the instant case read: "We the Jury being duly impaneled *do not find* beyond a reasonable doubt that the aggravating circumstance outweighs the mitigating factors" and recommend life imprisonment.  JA Vol. XVI, p. 2722.  (Emphasis supplied.).  Based on these instructions, the jurors could fail to find that the aggravating circumstance outweighed the mitigating factors either through a unanimous decision or simply due to the failure to unanimously agree that the aggravating circumstance outweighed the mitigating factors.  These verdict forms do not require the jury to unanimously reject the death penalty before considering the life sentences.  Further, unlike the verdict forms in *Mills*, the verdict forms in this case do not require the jury to make a unanimous finding on any of the mitigating factors.

The jury instructions given by the court did not result in a constitutional violation in this case, and petitioner's first ground for relief is denied.

**B. Second Ground for Relief**

Petitioner's second ground for relief is as follows:

Petitioner Goff's death sentence is constitutionally unreliable because the trial court refused to give an instruction on the meaning of mitigating factors, thus leaving the jurors with no standard to determine the weighing process necessary in making its recommendation, resulting in a violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

18

Petitioner argues that he was denied a fair trial due to the trial court's refusal to give his requested instruction on mitigating circumstances. Petitioner requested the following instruction: "Mitigating factors are factors that, while they do not justify or excuse the crime, nevertheless in fairness, sympathy and mercy, may be considered by you, as a call for a penalty less than death, or lessen the appropriateness of a sentence of death." JA Vol. XV, p. 2446. The trial court instructed the jury:

> In making your decision you will consider all the evidence, the arguments of counsel, and all other information and all other reports which are relevant to the nature and circumstances of the aggravating circumstances or to any mitigating factors including, but not limited to, the nature and circumstances of the offense, and 1) the history and character and background of the Defendant, 2) the youth of the Defendant, and 3) any other factors that are relevant to the issue of whether the Defendant should be sentenced to death.

Petitioner raised the failure to give his requested instruction on direct appeal, arguing that the instruction given by the court left the jury without any guidance, or vested the jury with almost total discretion. The court of appeals disagreed and held that the instructions given by the trial court complied with Ohio law. *Goff*, 1997 WL 194898 at *8. The court noted that "while the trial court is required to give a full and correct statement of the law, '[a]ny attempt to define or explain [a factor might be] viewed as an attempt to restrict that factor, and would [be] improper.'" *Id.* (quoting *State v. Rogers*, 17 Ohio St.3d 174, 182, 478 N.E.2d 984 (1985)).

The Ohio Supreme Court rejected petitioner's argument that the instructions failed to channel the jury's discretion, noting that the instructions "were not incorrect, nor did they fail to guide

19

the jury in its decision-making process." *Goff*, 82 Ohio St.3d at 128. The court also rejected petitioner's argument that the instructions failed to adequately define "mitigating evidence" as set forth in *State v. Holloway*, 38 Ohio St.3d 239, 242, 527 N.E.2d 831 (1988). *Id.* at 130. The court held that the trial court's failure to define "mitigation" did not constitute prejudicial error, noting that the "trial court defined what factors the jury was to consider, and implicit in the trial court's instruction was that the factors set forth by the defense were factors relevant to whether appellant should be sentenced to death." *Id.* The court cited *Buchanan v. Angelone*, 522 U.S. 269 (1998) for the proposition that the absence of instructions on the concept of mitigation does not violate the Eighth and Fourteenth Amendments. *Id.*

The state courts did not misapply the law of the United States Supreme Court in rejecting petitioner's argument. During the mitigation phase of a capital case, the jury may not be precluded from considering any constitutionally relevant mitigating evidence. *Penry v. Lynaugh*, 492 U.S. 302, 317-18 (1989); *Eddings v. Oklahoma*, 455 U.S. 104, 113-14 (1982). "However, the state may shape and structure the jury's consideration of mitigation so long as it does not preclude the jury from giving effect to any relevant mitigating evidence." *Buchanan*, 522 U.S. at 276. In regard to the mitigation phase, the Supreme Court has "emphasized the need for a broad inquiry into all relevant mitigating evidence to allow an individualized determination." *Id*. The standard for determining whether the court's instructions satisfy these principles is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration

20

of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 367-68 (1990). However, the state is not required to affirmatively structure the manner in which juries consider mitigating evidence, and complete jury discretion is constitutionally permissible. *Buchanan*, 522 U.S. at 276.

In *Buchanan*, the petitioner argued that the jury instructions in his case failed to provide the jury with express guidance on the concept of mitigation. The Supreme Court rejected petitioner's argument that he was denied a fair trial due to the trial court's failure to provide the jury with express guidance on the concept of mitigation. *Buchanan*, 522 U.S. at 275. The Court further held that the instruction given, which told the jury to base its decision on "all the evidence," afforded the jury an opportunity to consider mitigating evidence. *Id.* at 277.

The instructions given in the instant case, which also told the jury to consider "all the evidence," were consistent with Ohio law, and allowed the jury to consider the mitigating evidence presented in this case. In *Buell v. Mitchell*, 274 F.3d 337, 353 (6th Cir. 2001), the Sixth Circuit held that instructions very similar to those given in the instant case were consistent with the Supreme Court's ruling in *Penry*, 492 U.S. at 328, that the jury "must be able to consider and give effect to any mitigating evidence relevant to a defendant's background and character or the circumstances of the crime." *See also Mason v. Mitchell*, 320 F.3d 604, 639 (6th Cir. 2003)(instructions adequately guided the jury and did not restrict consideration of mitigating evidence). The requested definition of "mitigation" was not constitutionally required under *Buchanan*. The state courts did not misapply Supreme

21

Court law in overruling petitioner's arguments in that regard, and petitioner's second ground for relief is not well taken.

**C. Fourth Ground for Relief**

Petitioner's fourth ground for relief is as follows:

> Petitioner Goff's right to a fair trial was violated when the prosecutor failed to disclose a plea agreement and favorable treatment given to a key prosecution witness, such misconduct by the prosecutor thereby tainting the trial proceedings contra the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

Petitioner contends that he was denied a fair trial by reason of the prosecution's failure to properly disclose consideration given to a prosecution witness, Keith Lamar Jones, for his testimony at petitioner's trial. Petitioner contends that this failure violated his constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963).

Petitioner first asserted this argument in his state court postconviction petition. In a decision filed on April 26, 2000, the trial court denied this claim. JA Vol. V, p. 326. The trial court noted the trial transcript, which revealed that Jones was called to testify on July 26, 1995. *Id.*, p. 328. The trial court also reviewed the affidavits of William E. Peelle, Clinton County Prosecutor, and Jonathan Woodman, the attorney for Jones. JA Vol. V, pp. 184-186.

Peelle stated in his affidavit that neither Jones nor anyone on his behalf requested any consideration for Jones's testimony prior to his giving testimony at petitioner's trial. *Id.*, p. 184, ¶ 4. Peelle further stated that he was unaware that charges were pending against Jones in federal court until he sought Jones's presence for trial, and that he had no discussions with the United

22

States Attorney's Office concerning Jones's testimony in petitioner's trial. *Id.*, pp. 184, 186, ¶¶ 5-6. Peelle further stated that on September 15, 1995, subsequent to Jones's testimony, he received a letter from Woodman requesting that he send a letter to federal court, and that this September 15th letter was the first and only request for any consideration for Jones. *Id.*, p. 186, ¶ 7. On September 20, 1995, Peelle sent a letter to the federal court on his behalf. *Id.*, ¶ 8.

Woodman stated in his affidavit that prior to Jones's testimony in petitioner's trial, he had no knowledge that Jones had information relevant to petitioner's case or that Jones was scheduled to testify, nor did he speak with anyone in the United States Attorney's Office or the Clinton County Prosecutor's Office regarding Jones's testimony. JA Vol. V, p. 185, ¶¶ 2-3. Woodman stated that he first learned that Jones was scheduled to testify when the Clinton County sheriff's deputies arrived at the Franklin County Jail to take Jones to Clinton County. *Id.*, p. 185, ¶ 4. Woodman further stated that no agreements, discussions or negotiations for leniency occurred prior to Jones's testimony. *Id.*, ¶ 5. Subsequent to petitioner's trial, Woodman contacted the Clinton County Prosecutor requesting a letter on behalf of Jones to be presented in federal court, and that letter was received and forwarded to the federal court. *Id.*, ¶¶ 7-8.

The trial court also reviewed documents submitted by petitioner which described Jones's cooperation with the federal authorities. The trial court noted that these documents revealed that Jones cooperated with federal officials from the date of his arrest by "providing information to [the] I.R.S., agents of Health

and Human Services, and other government agencies, all matters unrelated to this case." JA Vol. V, p. 328. The trial court concluded,

> Based upon a review of the record, the transcripts, and the exhibits the court finds that there is no evidence of any consideration given to Mr. Jones in exchange for his testimony. The affidavits and exhibits reflect that the state did not receive any requests until some 51 days after Jones testified. There is no evidence of any prior promises or agreements. Mere speculation and unsubstantiated allegations do not entitle Petitioner to relief.

JA Vol. V, pp. 328-29.

Petitioner filed an appeal from the denial of postconviction relief. The Twelfth District Court of Appeals for Clinton County, Ohio, referred to the standards set forth by the United States Supreme Court for evaluating the effect of an alleged nondisclosure of evidence. *State v. Goff*, No. CA2000-05-014, 2001 WL 208845 at *3-4 (Ohio App. March 5, 2001). The court noted that unbeknownst to either the state or petitioner, Jones signed a written plea agreement in his federal case on June 15, 1995. This plea agreement included a paragraph in which the United States agreed to make known to the court any substantial assistance rendered by Jones in the investigation or prosecution of others who had committed criminal offenses. The agreement also stated that the government, at its discretion, "may move the Court ... for an appropriate departure from the otherwise applicable guideline range" and "will in connection therewith make known to the Court the nature and extent of [Jones's] assistance." *See id.* at *5. Jones entered a guilty plea to the federal charge on July 10, 1995. He testified in petitioner's case on July 26, 1995. *Id*. The court

24

of appeals further noted that Jones was asked on cross-examination during petitioner's trial whether he was under indictment or investigation in federal court, and he stated that he was and that he had pleaded guilty to the federal charge. *Id.*

The court of appeals held that the trial court properly dismissed this claim, and that the record supported the trial court's conclusion that there was no evidence of any consideration to be given Jones in exchange for his testimony. *Id.* The court noted that although the record indicated that the state became aware of Jones's pending federal charge, there was no evidence as to when, if ever, the state learned about Jones's plea agreement. *Id*.

The court of appeals further held that even assuming that the state knew about the plea agreement before Jones's testimony and failed to disclose it to the defense, there was no "'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at *6 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). The court of appeals noted that Jones's testimony was substantially confirmed by the testimony of Timothy Schaffer, petitioner's friend, and that other parts of Jones's testimony were also confirmed by another witness. *Id.* The court of appeals also commented that Jones's credibility was already seriously challenged on cross-examination when he admitted to having a number of convictions, including insurance fraud, theft by deception, and receiving stolen property, and further admitted to having "a long history of dishonest behavior," including lying under oath on two separate occasions, writing bogus contracts for a cellular phone

25

company, and "face-to-face lying to people[.]" *Id.*  The court of appeals held that since the alleged undisclosed evidence merely furnished an additional basis on which to challenge Jones, whose credibility had already been shown to be questionable or subject to attack by reason of other evidence, the undisclosed evidence was cumulative, and not material.  *Id.*

Petitioner appealed the decision of the court of appeals to the Ohio Supreme Court, which summarily dismissed the appeal.  *See State v. Goff*, 92 Ohio St.3d 1430, 749 N.E.2d 756 (2001).

Under *Brady v. Maryland*, an accused is denied due process where the state fails to disclose evidence upon the request of the accused which is material to guilt or punishment.  *Brady*, 373 U.S. at 87.  The *Brady* doctrine includes impeachment evidence.  *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).  To qualify as "material evidence," there must be "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  *Bagley*, 473 U.S. at 682.  "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  *Kyles*, 514 U.S. at 434.  A *Brady* violation is established "by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *Id*. at 435.  The mere possibility that an item of undisclosed evidence might have helped the defense, or might had affected the outcome of the trial, does

26

not establish "materiality;" rather, the failure to disclose evidence must be of sufficient significance to result in the denial of the defendant's right to a fair trial. *United States v. Agurs*, 427 U.S. 97, 108-110 (1976). *See also Giglio v. United States*, 405 U.S. 150, 154 (1972)(reversal not required where undisclosed evidence was possibly useful to the defense but not likely to have changed the verdict).

The state trial court found that there was "no evidence of any consideration given to Mr. Jones in exchange for his testimony" and that "the state did not receive any requests until some <u>51 days</u> after Jones testified." JA Vol. V, pp. 328-29. The trial court further found, "There is no evidence of any prior promises or agreements." *Id*. at 329. The state court of appeals affirmed these factual findings on appeal, and further noted that "it is not clear when, if ever before Jones' testimony, the state learned about Jones' plea agreement and/or guilty plea." *Goff*, 2001 WL 208845 at *5.

This court must defer to these factual findings by the state court. *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000); 28 U.S.C. §2254(e)(1)(findings of fact of a state court are presumed to be correct). This court finds that the state court decisions on this point were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, §2254(d)(2), and that petitioner has not rebutted the presumption of correctness by clear and convincing evidence.

There is no evidence that the state prosecutors ever promised Jones any consideration in exchange for his testimony. There is no evidence that they were aware that he had entered into a plea

27

agreement in the federal prosecution which included the possibility of some consideration at sentencing, at the discretion of the government and the sentencing judge, if he provided substantial assistance.

Petitioner argues that the knowledge of the federal prosecutors should be imputed to the Clinton County prosecutors. However, there is no basis for doing so in this case. The prosecution has a duty to learn of any favorable evidence "known to others acting on the government's behalf in the case[.]" *Kyles*, 514 U.S. at 436. However, a prosecutor has no obligation under *Brady* to learn of information possessed by other government agencies having no involvement in the investigation or prosecution at issue. *United States v. Morris*, 80 F.3d 1151, 1169-70 (7th Cir. 1996). *Brady* does not apply to information that is not wholly within the control of the prosecution. *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). *See Kasi v. Angelone*, 300 F.3d 487, 506 (4th Cir. 2002)(rejecting claim that state prosecutors had duty to review federal agency files over which they had no control); *Moon v. Head*, 285 F.3d 1301, 1309 (11th Cir. 2002)(prosecution has no duty to undertake a fishing expedition in other jurisdictions in an effort to find potentially impeaching evidence).

In *Moon*, the court declined to impute the knowledge of a Tennessee law enforcement officer to the Georgia prosecutor where there was no evidence that the Georgia and Tennessee officials were engaged in a joint investigation, or that anyone in Tennessee was acting as an agent of the Georgia prosecutor, or that the Tennessee officer was under the direction or supervision of the Georgia prosecutor. *Moon*, 285 F.3d at 1310.

28

There is no evidence in this case that the Clinton County prosecution team was aware of Jones's plea agreement in the federal case prior to his testimony. There is also no evidence that the federal prosecution of Jones for misuse of a social security number was in any way related to petitioner's case, or that the United States Attorney's Office was working with the Clinton County Prosecutor's Office in any way on petitioner's case. In fact, the evidence is uncontroverted that Peelle, the prosecutor in petitioner's case, was unaware of the federal charges pending against Jones until the Clinton County sheriff's deputies attempted to obtain custody of him at the Franklin County Jail and learned that they were unable to secure his release without a federal court order. JA Vol. V, p. 184, Peelle Aff., ¶ 5; p. 185, Woodman Aff., ¶ 4. The evidence further indicates that prior to that time, Jones's attorney was unaware that Jones was scheduled to be a witness in petitioner's trial. Woodman Aff., ¶ 2. To secure Jones's release to the Clinton County deputies, it was necessary for Woodman and the assistant United States attorney to submit an emergency agreed motion to the federal court. *Id*., Woodman Aff., ¶ 4. The fact that an emergency motion was required indicates that the matter of Jones's testimony was also a surprise to the assistant United States attorney in Jones's federal case, and significantly undercuts petitioner's speculations that the United States Attorney's Office was acting in concert with the Clinton County authorities. The record supports the finding of the state courts that no *Brady* violation occurred in this case.

Even assuming that the prosecutors in petitioner's case were aware of Jones's plea agreement in the federal case prior to his

testimony, no *Brady* violation occurs where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source. *Byrd*, 209 F.3d at 486; *Workman v. Bell*, 178 F.3d 759, 767 (6th Cir. 1998). During the cross-examination of Jones at trial, defense counsel elicited the information that Jones was under indictment in federal court, that he had pleaded guilty to the charge of misuse of a social security number, and that he was looking at more time due to this conviction. JA Vol. XII, pp. 2075, 2077. This line of questioning indicates that defense counsel was aware of Jones's federal charges at that time. Defense counsel could have asked Jones during cross-examination about whether he had pleaded guilty pursuant to a plea agreement and could have inquired about the terms of that agreement.

In addition, "'where the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material.'" *Byrd*, 209 F.3d at 518 (quoting *United States v. Avellino*, 136 F.3d 249, 257 (2nd Cir. 1998)). Jones testified that he had spent ten of his twenty adult years in jail. JA Vol. XII, p. 2075. He admitted that he was under indictment in federal court for misuse of a social security number, an offense which involved making a fraudulent application for a credit card, and that he had pleaded guilty to that offense. *Id.*, pp. 2075, 2077. He admitted to two separate instances of insurance fraud which involved lying under

30

oath.  *Id.*, p. 2076.  He admitted to a conviction involving writing false cellular phone contracts.  *Id.*, pp. 2078-79.  He admitted three other convictions for theft by deception.  *Id.*, pp. 2081-83.  He also acknowledged convictions for receiving stolen property and breaking and entering, and burglary.  *Id.*, pp. 2083-84.  He also acknowledged that he was charged with theft while in the penal institution.  *Id.*, p. 2085.  He further admitted to misdemeanor convictions for resisting arrest and theft, and that he had a long history of dishonest behavior.  *Id.*, p. 2086.  In light of this extensive impeachment, it cannot be said that Jones's plea agreement in the federal case "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *Kyles*, 514 U.S. at 435.

Petitioner was not denied a fair trial by reason of the failure of the state prosecutors to discover and disclose Jones's plea agreement prior to his testimony at petitioner's trial.  The Ohio courts correctly applied federal law in addressing this claim, and their decisions were not contrary to, nor did they involve, an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.  The state court decisions were also based on a reasonable determination of the facts in light of the evidence presented in the state court proceeding.  Petitioner's fourth ground for relief is denied.

**D. Fifth Ground for Relief**

Petitioner's fifth ground for relief is as follows:

When Petitioner Goff requests that the trial court instruct the jury they are to consider specific mitigating factors introduced at the mitigation hearing, the failure of the court to do so results in an unreliable death sentence contra the Fifth, Sixth,

Eighth, and Fourteenth Amendments to the U.S. Constitution.

Prior to the mitigation hearing, counsel for petitioner requested that the court instruct on specific mitigating factors raised by the defense. JA Vol. XV, p. 2436. Petitioner requested that the jury be instructed on: (1) petitioner's personality disorder; (2) any residual doubt about petitioner's guilt of the offense charged or an aggravating circumstance; (3) petitioner's potential for rehabilitation; (4) petitioner's ability to make a well-behaved and peaceful adjustment to life in prison; (5) petitioner's ability to lead a useful life behind bars if sentenced to life imprisonment; (6) petitioner's devotion to and care of his family members; (7) petitioner's deprivation of parental nurturing and the fact that his conduct disorder was caused by family environment; and (8) petitioner's youth.

As previously noted, the trial court instructed the jury:

> In making your decision you will consider all the evidence, the arguments of counsel, and all other information and all other reports which are relevant to the nature and circumstances of the aggravating circumstances or to any mitigating factors including, but not limited to, the nature and circumstances of the offense, and 1) the history and character and background of the Defendant, 2) the youth of the Defendant, and 3) any other factors that are relevant to the issue of whether the Defendant should be sentenced to death.

JA Vol. XVI, p. 2714. These instructions did refer specifically to request number (8), the petitioner's youth.

Petitioner raised the failure to instruct the jury on the above mitigating factors on direct appeal. The court of appeals held that the trial court was not required to tailor the instructions to the evidence presented, and that the instructions

32

given were a correct statement of law which did not exclude consideration of possible mitigating factors. *Goff*, 1997 WL 194898 at *12. The court concluded that petitioner was not entitled to an instruction on (2) residual doubt, citing *State v. Garner*, 74 Ohio St.3d 49, 56-57, 656 N.E.2d 623 (1995), and held that the trial court did not err in failing to instruct the jury on residual doubt. *Id*. The court noted that under *Garner* and *State v. Grant*, 67 Ohio St.3d 465, 620 N.E.2d 50 (1993), a capital defendant may argue but is not entitled to a separate instruction concerning a mitigating factor. *Id*. at *9. The court also held that the trial court did not err in refusing to instruct the jury on (4) petitioner's ability to adjust to life in prison. *Id*. at *11. The court distinguished *Skipper v. South Carolina*, 476 U.S. 1 (1986), noting that in this case, petitioner was permitted to present mitigation evidence on the subject of his positive adjustment to incarceration. *Id*.

In addressing this claim of error, the Ohio Supreme Court held that a "trial court need not specifically instruct that particular evidence is mitigating, nor are comments by the court on evidence generally appropriate." *Goff*, 82 Ohio St.3d at 130 (citing *State v. Landrum*, 53 Ohio St.3d 107, 122, 559 N.E.2d 710 (1990)(trial court did not err by following statutory language and declining to instruct that particular evidence was a specific mitigating factor)). The court noted that the jury in petitioner's case was permitted to consider all the mitigation evidence and was not precluded from considering any evidence as mitigating. *Id*. The court then cited *Buchanan* for the proposition that the absence of instructions on the concept of mitigation and on particular

33

statutorily defined mitigating factors does not violate the Eighth and Fourteenth Amendments. *Id*. The Ohio Supreme Court, *id*. at 131, also noted the holding in *Buchanan* that states are not required to affirmatively structure in a particular way the manner in which juries consider mitigating evidence. The court referred to the standard in *Boyde*, 494 U.S. at 386 ("[T]here is not a reasonable likelihood that the jurors in petitioner's case understood the challenged instructions to preclude consideration of relevant mitigating evidence offered by petitioner.").

The Ohio Supreme Court also held that the trial court was not required to instruct on residual doubt (citing *Garner*, 74 Ohio St.3d at 56-57), and noted that residual doubt is not an acceptable mitigating factor since it is irrelevant to the issue of whether the defendant should be sentenced to death (citing *State v. McGuire*, 80 Ohio St.3d 390, 686 N.E.2d 1112 (1997)). *Id*.

The state courts held that the instructions given by the trial court in the instant case comported with Ohio law, and petitioner was not denied due process by reason of these instructions. The state courts also properly applied federal law as announced in *Buchanan* and *Boyde*. The court's instructions permitted the jury to consider all the evidence presented by petitioner in mitigation. *See Buell*, 274 F.3d at 353 (upholding instructions very similar to those given in the instant case as being consistent with the Supreme Court's ruling in *Penry*, 492 U.S. at 328, that the jury "must be able to consider and give effect to any mitigating evidence relevant to a defendant's background and character or the circumstances of the crime.") Petitioner's fifth ground for relief is denied.

**E. Sixth Ground for Relief**

Petitioner's sixth ground for relief is as follows:

When Petitioner Goff specifically requests that the trial court instruct the jury not to consider "the nature and circumstances of the offense" in their weighing process, and in its listing of the mitigating factors, the failure of the court to so instruct left the jury with open discretion to consider this non-statutory aggravating factor contra the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

Petitioner contends that he was denied a fair trial when the trial court instructed the jury over his objection that it could consider the nature and circumstances of the offense as a mitigating circumstance.

On direct appeal, the court of appeals rejected this argument, noting that Ohio Rev. Code §2929.04(B) requires the jury to "consider and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and" the listed statutory factors. *Goff*, 1997 WL 194898 at *8. The court noted that under §2929.04(B), the nature and circumstances of the offense must be included as a mitigating factor to be weighed against the aggravating circumstances when deciding whether to impose a death sentence, citing *State v. Loza*, 71 Ohio St.3d 61, 641 N.E.2d 1082 (1994); *State v. Grant*, 67 Ohio St.3d 465, 620 N.E.2d 50 (1993), and *State v. Stumpf*, 32 Ohio St.3d 95, 99, 512 N.E.2d 598 (1987). *Id.* The court of appeals acknowledged that under *State v. DePew*, 38 Ohio St.3d 275, 528 N.E.2d 542 (1988) and *State v. Hicks*, 43 Ohio St.3d 72, 538 N.E.2d 1030 (1989), it is error for the trial court to instruct a jury to consider mitigating factors not raised by the defendant. *Id.* at

35

*9. However, the court concluded that *DePew* and *Hicks* were not inconsistent with *Stumpf* in light of the clear language of §2929.04(B), and noted that while the trial judge listed the nature and circumstances of the offense as a mitigating factor, he made no further comment regarding this factor. *Id*. The court held that the instruction did not constitute reversible error. *Id*.

The Ohio Supreme Court held that the trial court correctly described the process of weighing the aggravating circumstances against the mitigating factors. *Goff*, 82 Ohio St.3d at 129.

The Ohio Supreme Court has held that under §2929.04(B), it is proper, and indeed required, that the court instruct the jury to consider the nature and circumstances of the offense as a mitigating factor. *See State v. Dixon*, 101 Ohio St.3d 328, 341, 805 N.E.2d 1042 (2004)(instruction regarding nature and circumstances of offense not erroneous and required under §2929.04(B) even where defendant objected to the instruction and never argued that the nature and circumstances of the offense constituted a mitigating factor in the case). A state statute which requires the jury to consider the circumstances of the crime for which the defendant was convicted is not unconstitutional. *Tuilaepa v. California*, 512 U.S. 967, 975-76 (1994). In *Tuilaepa*, the Supreme Court stated:

> [O]ur capital jurisprudence has established that the sentencer should consider the circumstances of the crime in deciding whether to impose the death penalty.... We would be hard pressed to invalidate a jury instruction that implements what we have said the law requires.... The circumstances of the crime are a traditional subject for consideration by the sentencer, and an instruction to consider the circumstances is neither vague nor otherwise improper under our Eighth Amendment jurisprudence.

*Id.* at 976.

In this case, the state courts held that the instructions given by the trial court were correct under state law. Thus, petitioner was not denied due process. However, even if the instruction had been incorrect under Ohio law, petitioner would not be entitled to habeas relief. The Sixth Circuit considered a similar argument concerning an alleged violation of *DePew* in *Hill v. Mitchell*, 400 F.3d 308 (6th Cir. 2005). The court noted that the right to have certain statutory mitigating factors considered is a creature of state statute, not the federal Constitution. *Id.* at 333. The court further noted that under *Estelle*, 502 U.S. at 71-72, the fact that an instruction is allegedly incorrect under state law is not a basis for habeas relief by itself. *Id.* The Sixth Circuit concluded that even assuming that the instructions in that case violated *DePew*, that error did not provide a basis for federal habeas relief, because the brief mention of inapplicable mitigating factors "did not 'so infect [] the entire trial that the resulting conviction violates due process[.]'" *Id.* (quoting *Estelle*, 502 U.S. at 72).

Here, the trial court's instruction was proper under Ohio law, and the decisions of the state courts did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Petitioner's sixth ground for relief is denied.

**F. Seventh Ground for Relief**

Petitioner's seventh ground for relief is as follows:

When the trial court refuses to give a specific instruction that the jury is not to consider the

37

aggravated murder itself but only the aggravating circumstances in determining punishment, the failure to give such an instruction grants the jury open discretion, resulting in an unreliable and arbitrary verdict contra the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

Prior to the mitigation hearing, petitioner asked the court to charge the jurors that they were to weigh only the aggravating circumstance and not the aggravated murder itself in determining punishment. JA Vol XV, pp. 2442-43. The trial court declined to give the requested instruction, and instead instructed the jury:

> In making your decision you will consider all the evidence, the arguments of counsel, and all other information and all other reports which are relevant to the nature and circumstances of the aggravating circumstances or to any mitigating factors including, but not limited to the nature and circumstances of the offense, and 1) the history and character and background of the Defendant, 2) the youth of the Defendant, and 3) any other factors that are relevant to the issue of whether the Defendant should be sentenced to death.
>
> You are to weigh the aggravating circumstances which you have already found against any mitigating factors which you find to exist. You are limited in your consideration solely to your findings in Count 1 and Count 2 relating to the death of Myrtle Rutledge and those aggravating circumstances which you have found to exist.

JA Vol. XVI, p. 2714.

In addressing this argument, the court of appeals noted that it could find no cases supporting petitioner's position that the requested instruction was required. *Goff*, 1997 WL 194898 at *9. The court stated that the instructions given by the court closely tracked the language of Ohio Rev. Code §2929.04(B), which requires the jury to "consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and

38

background of the offender," and the statutory mitigating factors. §2929.04(B). The court also noted that while the trial court did not instruct the jury not to consider the aggravated murder, it also did not instruct the jury to consider the aggravated murder. *Id*. The court of appeals held that there was nothing in the record indicating that the jury was confused or misled as to what it should consider, and found no error in the trial court's instructions. *Id*. On further appeal, the Ohio Supreme Court held that the trial court's charge correctly identified the aggravating circumstances and the process of weighing the aggravating circumstances against the mitigating factors. *Goff*, 82 Ohio St.3d at 129.

The state courts determined that the charge given by the trial court was not erroneous. The jury was never instructed to consider the circumstances of the aggravated murder in determining punishment. Rather, the trial court instructed the jurors to consider "the nature and circumstances of the aggravating circumstances[.]" There is no language in the instructions which would lead the jurors to conclude that they were free to consider the circumstances of the aggravated murder in the weighing process. Where the trial court instructs the jury in accordance with state law and sufficiently addresses the matters of law at issue, no error results, and the petitioner is not entitled to habeas relief. *White v. Mitchell*, 431 F.3d 517, 534-35 (6th Cir. 2005). The trial court's refusal to instruct as petitioner requested was not contrary to federal law, because under *Tuilaepa*, 512 U.S. at 76, the jurors are permitted to consider the circumstances of the crime in deciding whether to impose the death penalty. Petitioner is not

entitled to relief on this ground.

**G. Eighth Ground for Relief**

Petitioner's eighth ground for relief is as follows:

When Petitioner Goff's drug impairment is introduced as
an integral part of the mitigation proceedings, the
failure on the part of the trial court to instruct the
jury to consider this as a mitigating factor, upon the
defense request, constitutes violations of Petitioner
Goff's Fifth, Sixth, Eighth, and Fourteenth Amendments to
the U.S. Constitution.

Petitioner requested that the jury be instructed that his drug
impairment could be considered as a mitigating factor. JA Vol. XV,
p. 2439. In addressing this argument on direct appeal, the court
of appeals noted that although alcohol or drug impairment is a
mitigating factor which may be considered under Ohio law, citing
*State v. D'Ambrosio*, 73 Ohio St.3d 141, 145, 652 N.E.2d 710 (1995),
a capital defendant is not entitled to a separate instruction on a
mitigating factor under the "catch all" provision of Ohio Rev. Code
§2929.04(B)(7). *Goff*, 1997 WL 194898 at *9. The court further
noted that the instructions of the trial court, which told the jury
to "consider all evidence ... relevant to ... any mitigating
factors, including ... any other factors that are relevant to the
issue of whether the Defendant should be sentenced to death[,]"
were sufficient to permit the jury to consider the evidence of
petitioner's drug and alcohol abuse in mitigation. *Id*. at *10.

The Ohio Supreme Court, applying *Buchanan*, *Eddings*, and *Boyde*,
held that the trial court's instructions did not foreclose the
jury's consideration of any mitigating evidence, and that there was
no reasonable likelihood that the jurors understood the
instructions to preclude consideration of relevant mitigating
evidence offered by petitioner. *Goff*, 82 Ohio St.3d at 130-31.

40

As previously noted, the Supreme Court has held that a "state may shape and structure the jury's consideration of mitigation so long as it does not preclude the jury from giving effect to any relevant mitigating evidence." *Buchanan*, 522 U.S. at 276. The standard for determining whether the court's instructions satisfy these principles is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde*, 494 U.S. at 367-68. Further, the state is not required to affirmatively structure the manner in which juries consider mitigating evidence, and complete jury discretion is constitutionally permissible. *Buchanan*, 522 U.S. at 276.

The instructions given in this case were held to be proper under Ohio law, which does not require any special instructions on specific mitigating factors raised by the evidence presented. The instructions permitted the jury to consider "all the evidence, the arguments of counsel, and all other information and all other reports which are relevant to ... any mitigating factors" in deciding the issue of whether petitioner should be sentenced to death. The instructions did not preclude the jury's consideration of petitioner's alcohol and substance abuse problems, but instead were broad enough to allow the jury to consider them in mitigation. The instructions thus complied with federal standards. *See Bowling v. Parker*, 344 F.3d 487, 503 (6th Cir. 2003)(holding that a "catch-all" mitigation instruction was sufficient). The decision of the state courts on this ground did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, and the eighth ground for relief is

41

denied.

## H. Thirteenth Ground for Relief

Petitioner's thirteenth ground for relief is as follows:

Petitioner Goff was denied effective assistance of appellate counsel as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.

Petitioner claims that appellate counsel were ineffective in failing to raise certain allegations of ineffective assistance of trial counsel as assignments of error on appeal. Petitioner argues that appellate counsel should have asserted the following arguments:

(A) Ineffective trial counsel in informing the entire jury panel, individually, that Petitioner Goff was absolutely not going to testify in the upcoming trial proceedings, thereby denying Petitioner Goff any right to testify in his own case.

(B) Trial counsel failed to request the trial court for an informant-accomplice jury instruction relevant to the prosecution witnesses who testified in the first phase of his jury trial. (ineffective trial counsel).

(C) Trial counsel failed to recognize that the alternative juror who was substituted at mid-stream of the mitigation hearing, was an outside individual tainting the entire process of the jury deliberations and its decisions.

(D) The failure on the part of trial counsel to recognize that a principal offender definition was necessary as an instruction under the facts of Petitioner Goff's case.

(E) The failure on the part of trial counsel to properly prepare the psychologist who testified in Petitioner Goff's mitigation hearing.

(F) The failure of trial counsel to recognize that James Goff was constitutionally entitled to allocution before sentencing.

(G) The failure to raise a sufficiency of the evidence

claim.

(H) The failure on the part of trial counsel to do an independent analysis from an expert on the hair analysis.

(I) The failure of defense counsel to object when prosecution brought in the character of Myrtle Rutledge. (Tr. 1748-49).

(J) The failure on the part of trial counsel to exclude references to Mr. Goff's request for an attorney at the first phase. (Tr. 1969; 1998). *Combs v. Coyle*, 205 F.3d 269 (6th Cir. 2000).

(K) The failure by trial counsel to raise an "actual conflict" issue known at the beginning of trial, but not communicated until the mitigation phase. (Tr. 2458-65). [Petitioner Goff was represented earlier as guardian *ad litem* by one of the prosecutors in the current case.]

(L) The failure to raise and incorporate the above isses as included in the ineffective assistance of trial counsel claim on direct appeal.

Petition, Doc. No. 13, ¶ 139.

On September 8, 2004, this court issued an opinion and order concluding that sub-parts G, H, I, and L were barred by procedural default because they had not been presented to the state courts in petitioner's Rule 26(B) application for reopening of his direct appeal. Doc. No. 61, pp. 8-9. Thus, those sub-parts have been dismissed and will not be addressed on the merits.

As for the remaining sub-parts set forth in ground thirteen, petitioner presented those allegations to the Ohio Supreme Court in a Rule 26(B) application for delayed reopening of his direct appeal, the procedure in Ohio for presenting claims of ineffective assistance of appellate counsel. The Supreme Court of Ohio issued a decision summarily rejecting his claims. *Goff*, 98 Ohio St.3d at 328-29. Where, as here, the state court has disposed of

constitutional claims without articulating its analysis, this court will "conduct an independent review of the record and applicable law to determine whether, under the AEDPA standard, the state court decision is contrary to federal law, unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005).

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Scrutiny of defense counsel's performance must be "highly deferential." *Id*. at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. To establish the second prong of the *Strickland* test, *i.e.*, prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable

44

probability is a probability sufficient to undermine confidence in the outcome." *Id*.  Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determine that petitioner has failed to satisfy one prong, it need not consider the other.  *Id*. at 697.

The *Strickland* test applies to appellate counsel.  *Burger v. Kemp*, 483 U.S. 776 (1987).  Counsel must provide reasonable professional judgment in presenting the appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985).  Generally, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986)(quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  *But see Smith v. Anderson*, 104 F.Supp.2d 773, 839 (S.D.Ohio 2000)("This Court believes that, in capital cases, appellate counsel should approach the traditional process of winnowing out claims with extreme caution."); *Jamison v. Collins*, 100 F.Supp.2d 647, 740-41 (S.D.Ohio 2000)("[W]e believe that any 'winnowing' or narrowing of issues must be done very cautiously when a person's life is at stake.").  The Sixth Circuit Court of Appeals has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

1.  Were the omitted issues "significant and obvious?"

2.  Was there arguably contrary authority on the omitted issues?

3.  Were the omitted issues clearly stronger than those presented?

4.  Were the omitted issues objected to at trial?

45

     5.    Were the trial court's rulings subject to deference on appeal?

     6.    Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

     7.    What was appellate counsel's level of experience and expertise?

     8.    Did the petitioner and appellate counsel meet and go over possible issues?

     9.    Is there evidence that counsel reviewed all the facts?

    10.    Were the omitted issues dealt with in other assignments of error?

    11.    Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999).  The Sixth Circuit cautioned, however, that this list is not exhaustive and need not produce a certain "score."  *Id*. at 428.

    Thus, to prevail on a claim of ineffective assistance of appellate counsel, petitioner must demonstrate that the appellate counsel's performance was unreasonably deficient, and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of petitioner's appeal would have been different. Logically, the failure of appellate counsel to raise nonmeritorious issues does not constitute unreasonably deficient performance; likewise, a petitioner cannot demonstrate that he was prejudiced because of appellate counsel's failure to raise a nonmeritorious issue or an error that was harmless. *See Williams v. Collins*, 16 F.3d 626, 635 (5th Cir. 1994); *Malcum v. Burt*, 276 F.Supp.2d 664, 678 (E.D.Mich. 2003); *see also Burton v. Renico*, 391 F.3d 764, 783

(6th Cir. 2004)("[T]he failure of Burton's counsel on direct appeal to raise Burton's various procedurally defaulted claims does not rise to the level of constitutionally ineffective assistance of counsel necessary to overcome procedural default because none of Burton's claims seem meritorious.").

Sub-Part (A) - Trial Counsel Ineffectiveness for Advising Prospective Jurors During Voir Dire That Petitioner Would Not Be Testifying.

In sub-part (A) of his thirteenth ground for relief, petitioner argues that his appellate counsel were ineffective for failing to raise a claim of trial counsel ineffectiveness stemming from trial counsel's actions during voir dire in advising each prospective juror that petitioner absolutely would not be testifying at trial. This, petitioner argues, denied him any possible chance of testifying on his own behalf, thereby violating his fundamental right to testify. Petitioner argues that appellate counsel performed unreasonably and to his prejudice in failing to challenge this aspect of trial counsel's performance. This court has already rejected this appellate counsel ineffectiveness claim.

Petitioner argued in his twelfth ground for relief that his trial attorneys essentially usurped his fundamental right to testify by informing each prospective juror during voir dire that petitioner absolutely would not be testifying at trial. In the Opinion and Order of September 9, 2004, this court concluded that petitioner's twelfth ground for relief was procedurally defaulted and that appellate counsel ineffectiveness did not constitute cause and prejudice sufficient to excuse the default of that claim. In other words, the court rejected the very appellate counsel

47

ineffectiveness claim raised by petitioner in sub-part (A) of his thirteenth ground for relief.  The court explained:

> The Court is not persuaded that the issue was significant and obvious.  Notwithstanding petitioner's assertions, the trial record is devoid of any evidence that petitioner's right to testify was usurped against his will or in violation of his fundamental rights.  That defense counsel indicated early and often that petitioner would not be testifying does not establish or even suggest that the decision not to have petitioner testify was anything but a voluntary one made by petitioner after discussions with, and at the advice of, his defense attorneys.  It is difficult to characterize as deficient defense counsel's decision to lock petitioner into that position, so to speak, when one takes into consideration the reasons later given by trial counsel in testimony for why they decided to advise petitioner against testifying – namely, because petitioner had admitted his involvement in the offenses and because petitioner exhibited a poor demeanor.  In light of the absence of any indication from the record that petitioner's decision not to testify was forced upon him by defense counsel, it tests the limits of credulity to suggest that an appellate attorney examining this trial record should have recognized this issue as significant and obvious.
>
> Petitioner would have had a difficult time finding authority to support his argument, especially in light of the absence of any suggestion in the record that he did not fully acquiesce in counsel's determination that he should not testify.  *Rock v. Arkansas*, 483 U.S. 44 (1987), suggests that criminal defendants have a constitutional right to testify in their defense.  That case may be characterized as positive authority, but not absolute authority, in support of petitioner's argument.  Moreover, Ohio law was fairly unsettled at the time of petitioner's trial and appeal regarding whether, or to what extent, criminal defendants enjoyed a fundamental right to testify.  The Ohio Supreme Court held in 1999 that, "[g]enerally, the defendant's right to testify is regarded both as a fundamental and a personal right that is waivable only by an accused." *State v. Bey*, 85 Ohio St. 3d 487, 499 (1999); *see also State v. Adkins*, 144 Ohio App. 3d 633, 644 (Ohio App. 12 Dist. 2001).  Prior to that, however, Ohio appellate courts were less definitive.  The Ohio Court of Appeals for the Eighth

48

Appellate District held as early as 1982 that criminal defendants had a constitutional right to testify. *See State v. Sims*, 1982 WL 5272, No. 43749 (Ohio App. 8 Dist. Apr. 1, 1982). The relative dearth of positive authority, combined with the fact that the record contains no evidence whatsoever that petitioner was somehow compelled to remain silent against his wishes, would have made it a formidable challenge on appellate counsel's part to argue this issue on appeal.

In light of the foregoing, the Court finds unpersuasive petitioner's assertion that this issue was clearly stronger than those that appellate counsel did raise. The Court has already noted that there is every reason to believe from the appellate record that counsel thoroughly reviewed the record in petitioner's case and were well versed in the facts of his case. As touched upon above, moreover, petitioner voiced no objection at trial regarding the fact that he was not called by defense counsel to testify.

The Court cannot find that the decision to omit this issue from petitioner's direct appeal was an unreasonable one that only an incompetent attorney would make. Further, there is virtually no probability, reasonable or otherwise, that the outcome of petitioner's appeal would have been different if appellate counsel had raised this issue. That being so, petitioner has not established ineffective assistance of appellate counsel sufficient to constitute cause for the default of his twelfth ground for relief.

Doc. No. 61, pp. 26-28. As the court has already found, sub-part (A) of petitioner's thirteenth ground for relief is without merit.

<u>Sub-Part (B) – Trial Counsel Ineffectiveness for Failing to Request a Jury Instruction on the Credibility of Informant-Accomplices as to Witnesses Who Testified Against Petitioner at Trial</u>.

In sub-part (B) of his thirteenth ground for relief, petitioner argues that his appellate attorneys were ineffective for failing to raise a claim of trial counsel ineffectiveness stemming

from counsel's failure to request a jury instruction on the credibility to be afforded to testimony by informants and accomplices.[2]  The court rejected essentially the same claim of appellate counsel ineffectiveness in its September 9, 2004, Opinion and Order.

Petitioner argued in his eleventh ground for relief that the trial court erred in not giving a jury instruction about the credibility to be afforded to testimony by informants and accomplices.  Crucial to the prosecution's case-in-chief, according to petitioner, was testimony by jailhouse informants Jerry Price and Keith Jones, as well as testimony by accomplices in other criminal activity undertaken by petitioner, *i.e.*, Manuel Jackson and Tim Shaffer.  In the September 9, 2004, Opinion and Order, the court concluded that petitioner's eleventh ground for relief was procedurally defaulted and that appellate counsel ineffectiveness did not constitute cause and prejudice sufficient to excuse the default of that claim.

Applying the *Mapes* factors identified above, the court reviewed the testimony of Manuel Jackson, Tim Shaffer, Jerry Price, and Keith Jones, and concluded that while the absence of a jury instruction regarding the credibility to be afforded testimony by accomplices or informants was a viable issue that appellate counsel certainly could have raised, the issue could not be characterized

---

[2]    Although the appellate counsel ineffectiveness claim that petitioner actually presented to the state courts in his Rule 26(B) application for reopening differs somewhat from the instant claim, the court will address it on the merits.  Petitioner argued to the state courts that his appellate attorneys were ineffective for failing to raise a claim challenging the fact that no accomplice/informant instruction was given.  Petitioner argues herein that his appellate attorneys were ineffective for failing to raise a claim challenging trial counsel's failure to request an accomplice/informant instruction.

50

as significant and obvious.  Doc. No. 61, p. 22.  The court noted that the credibility of those witnesses had aptly been undercut during defense counsel's cross-examination, that the trial court had given a general instruction on the credibility of witnesses and a more specific instruction on the bearing that criminal convictions have on the credibility of a witness, and that the applicable case law did not offer strong support for this issue on appeal.  *Id*. at 22-25.  Having concluded that the issue was not clearly stronger than the issues that appellate counsel had raised on direct appeal, this court rejected petitioner's argument that the decision to omit this issue from petitioner's direct appeal was an unreasonable one that only an incompetent attorney would make. The court also rejected petitioner's argument that there was a reasonable probability that the outcome of petitioner's appeal would have been different if appellate counsel had raised this issue.

For the same reasons, the court rejects the appellate counsel ineffectiveness claim set forth in sub-part (B) of petitioner's thirteenth ground for relief.  The reasons that led the court to conclude that appellate counsel were not ineffective for failing to raise a claim challenging the trial court's failure to give an informant-accomplice instruction also lead the court to conclude now that appellate counsel were not ineffective for failing to raise a claim challenging trial counsel's failure to request that instruction.

Sub-Part (C) – Trial Counsel Ineffectiveness for Failing to Recognize Structural Error in the Trial Court's Substitution of an Alternate Juror Midway During the Mitigation Hearing.

In sub-part (C) of his thirteenth ground for relief, petitioner argues that his appellate attorneys were ineffective for failing to raise a claim challenging trial counsel's failure to object to or otherwise recognize as error the trial court's substitution of an alternate juror during the mitigation hearing.[3] Petitioner reasons that after the original twelve jurors rendered a verdict following the trial phase, substitution during the mitigation phase of an alternate juror who did not participate in the trial-phase deliberations or verdict rendered the resulting penalty-phase verdict non-unanimous. Petitioner argues in sub-part (C) of his thirteenth ground for relief that his appellate attorneys performed unreasonably and to his prejudice in failing to challenge trial counsel's failure to object to the substitution. The court rejected essentially the same claim of appellate counsel ineffectiveness in its September 9, 2004, Opinion and Order.

Petitioner argued in his ninth ground for relief that the trial court erred in substituting an alternate juror during the mitigation phase, after the trial phase had been completed and a verdict rendered. In its September 9, 2004, Opinion and Order, the court concluded that petitioner's ninth ground for relief was procedurally defaulted and that appellate counsel ineffectiveness did not constitute cause and prejudice sufficient to excuse the default of that claim.

---

[3]    Although the appellate counsel ineffectiveness claim that petitioner presented to the state courts in his Rule 26(B) application for reopening differs somewhat from the instant claim, the court will address it on the merits. Petitioner argued to the state courts that his appellate attorneys were ineffective for failing to raise a claim challenging the trial court's decision to substitute an alternate juror during the mitigation phase. Petitioner argues herein that his appellate attorneys were ineffective for failing to raise a claim challenging trial counsel's failure to object to the trial court's substitution of the alternate juror.

Applying the *Mapes* factors identified above, this court concluded that appellate counsel were not ineffective for failing to raise a claim challenging the trial court's substitution of an alternate juror during the mitigation phase of petitioner's trial. Doc. No. 61, pp. 14-17. Specifically, the court concluded that the alleged error could not be characterized as significant and obvious, considering that the system appeared to work as it was intended to work, *i.e.*, an alternate juror replaced a juror who was unable to continue to serve. *Id.* at 14. This court further noted that controlling authority undermined the position that petitioner advocated, and that the issue was not clearly stronger than those that appellate counsel did raise. *Id.* at 15-16. Finally, given that petitioner's underlying argument that the substitution of the alternate juror undercut the unanimity of the sentencing verdict was unconvincing, and novel at best, this court held that appellate counsel could not be deemed ineffective for failing to raise a novel argument. *Id.* at 16-17.

For the same reasons, the court rejects the appellate counsel ineffectiveness claim set forth in sub-part (C) of petitioner's thirteenth ground for relief. The reasons that led the court to conclude that appellate counsel were not ineffective for failing to raise a claim challenging the trial court's substitution of an alternate juror during the mitigation phase also lead the court to conclude now that appellate counsel were not ineffective for failing to raise a claim challenging trial counsel's failure to object to or otherwise challenge that substitution.

Sub-Part (D) – Trial Counsel's Failure to Request a Definition of "Principal Offender" in the Jury Instructions.

53

In sub-part (D) of his thirteenth ground for relief, petitioner argues that his appellate attorneys were ineffective for failing to raise a claim challenging trial counsel's failure to recognize that a definition of "principal offender" was necessary as a jury instruction under the facts of petitioner's case.[4] Petitioner argues that a definition of "principal offender" was needed because the two death penalty specifications contained a "principal offender" reference, because testimony and the prosecution's statements arguably suggested that other individuals might have been involved in the offense, and because a "principal offender" as listed in a death penalty specification is for a more narrow class of offenders than an accomplice or an aider/abetter under Ohio law. Petitioner contends that without that guidance, the jury rendered an arbitrary verdict on the death penalty specifications. Petitioner argues that appellate counsel performed unreasonably and to petitioner's prejudice in failing to raise a claim challenging trial counsel's failure to request that the jury instructions include a definition of "principal offender." This court rejected essentially the same appellate counsel ineffectiveness claim in its September 9, 2004, Opinion and Order.

Petitioner argued in his tenth ground for relief that the trial court committed error in failing to include a definition of the term "principal offender" in the jury instructions. In the

---

[4] Although the appellate counsel ineffectiveness claim that petitioner actually presented to the state courts in his Rule 26(B) application for reopening differs somewhat from the instant claim, the court will address it on the merits. Petitioner argued to the state courts that his appellate attorneys were ineffective for failing to raise a claim challenging the fact that the jury instructions did not include a definition of "principal offender." Petitioner argues herein that his appellate attorneys were ineffective for failing to raise a claim challenging trial counsel's failure to request a jury instruction defining the term "principal offender."

September 9, 2004, Opinion and Order, this court concluded that petitioner's tenth ground for relief was procedurally defaulted and that appellate counsel ineffectiveness did not constitute cause and prejudice sufficient to excuse the default of that claim.

Applying the *Mapes* factors identified above, this court concluded that appellate counsel were not ineffective for failing to raise a claim challenging the trial court's failure to give a defintion of "principal offender" because the issue was not significant and obvious, the controlling case law contradicted the argument, and because the issue was not clearly stronger than the issues that appellate counsel did raise.  Doc. No. 61, pp. 19-21.  In concluding that the issue was not significant and obvious, the court noted that, even if the precise "principal offender" definition advocated by petitioner was not given, the jury was instructed that it had to find that petitioner had personally committed the acts.  In explaining why the issue would not have been significant and obvious to appellate counsel, the court further noted that, contrary to petitioner's assertion, there was an absence of any substantial evidence suggesting that other individuals were involved in the offense.

For the same reasons, the court rejects the appellate counsel ineffectiveness claim set forth in sub-part (D) of petitioner's thirteenth ground for relief.  The reasons that led the court to conclude that appellate counsel were not ineffective for failing to raise a claim challenging the trial court's failure to include the "principal offender" definition advocated by petitioner also lead the court to conclude now that appellate counsel were not ineffective for failing to raise a claim challenging trial

counsel's failure to request that instruction.

     Sub-Part (E) – Trial Counsel's Failure to Properly Prepare the Psychologist Who Testified at the Mitigation Hearing.

     In sub-part (E) of his thirteenth ground for relief, petitioner argues that his appellate attorneys were ineffective for failing to raise a claim challenging trial counsel's failure to properly prepare the psychologist who testified on petitioner's behalf during the mitigation hearing.  For the following reasons, the court rejects petitioner's argument that his appellate attorneys performed deficiently or that he was prejudiced by their deficient performance.

     Beyond the cursory allegation set forth in sub-part (E) of his thirteenth ground for relief, petitioner has never offered any further allegations about how trial counsel failed to properly prepare their mitigation psychologist or why appellate counsel should have recognized the heretofore unidentified missteps by trial counsel in this regard.  A review of the mitigation transcript reveals nothing that would have alerted reasonable appellate counsel of poor preparation on the part of trial counsel as to the testimony of their mitigation psychologist, Dr. Jeffrey Smalldon.  On the contrary, a review of Dr. Smalldon's testimony reveals a psychologist who was recognized by the trial court as an expert, who had extensive experience testifying at death penalty mitigation hearings, and who appeared prepared to testify at petitioner's mitigation hearing.  Dr. Smalldon had conducted numerous clinical evaluations of petitioner, had interviewed several relatives and acquaintances, and had reviewed records documenting petitioner's school background, involvement with

56

children's and social services, and contacts with the juvenile justice system. It also is apparent from the transcript that defense counsel were not only prepared to elicit the observations and diagnoses that Dr. Smalldon offered, but were also well versed generally in the concepts about which Dr. Smalldon testified and the manner in which they related to death penalty mitigation. If, ultimately, Dr. Smalldon's testimony did not persuade the jury to recommend a sentence other than death, it is not readily apparent from the record how that could be attributed to a failure on defense counsel's part to "properly prepare" him. Given the paucity of record evidence supporting a claim of trial counsel ineffectiveness for the failure to properly prepare Dr. Smalldon to testify, appellate counsel certainly cannot be regarded as ineffective for failing to raise on appeal an issue that was not apparent from the trial record.

Appellate counsel did not perform unreasonably in failing to raise a claim challenging trial counsel's failure to "properly prepare" Dr. Smalldon to testify. This issue cannot be classified as significant, obvious, or clearly stronger than the issues that appellate counsel did raise. Further, petitioner has failed utterly to show a reasonable, or even outside, probability that the outcome of his appeal would have been different if appellate counsel had raised this issue. In sum, the court concludes that sub-part (E) of petitioner's thirteenth ground for relief is wholly without merit.

<u>Sub-Part (F) – Trial Counsel's Failure to Recognize that Petitioner Was Constitutionally Entitled to Allocution Before Sentencing</u>.

57

In sub-part (F) of his thirteenth ground for relief, petitioner argues that his appellate counsel were ineffective for failing to raise a claim challenging trial counsel's failure to recognize that petitioner was constitutionally entitled to allocution before sentencing.[5] Petitioner points out that, during his sentencing hearing on August 18, 1995, he was never given the opportunity to speak before the trial court administered sentence. Citing *State v. Campbell*, 90 Ohio St. 3d 320, 738 N.E.2d 1178 (2000), and *State v. Green*, 90 Ohio St. 3d 352, 738 N.E.2d 1208 (2000), petitioner argues that the Ohio Supreme Court has affirmed the long-standing constitutional principle of the right to allocution. He further argues that when the right to allocution has been denied, re-sentencing is required. Petitioner contends that appellate counsel performed unreasonably and to petitioner's prejudice in failing to raise a claim challenging trial counsel's failure to recognize that petitioner was constitutionally entitled to allocution before he was sentenced. The court rejected a similar appellate counsel ineffectiveness claim in its September 9, 2004, Opinion and Order, and rejects this appellate counsel ineffectivneness claim for similar reasons.

Petitioner argued in his nineteenth ground for relief that the trial court committed error in sentencing petitioner without first affording him his constitutional right to allocution. In its

---

[5]     Although the appellate counsel ineffectiveness claim that petitioner actually presented to the state courts in his Rule 26(B) application for reopening differs somewhat from the instant claim, the court will address it on the merits. Petitioner argued to the state courts that his appellate attorneys were ineffective for failing to raise a claim challenging the fact that petitioner was not afforded his right to allocution. Petitioner argues herein that his appellate attorneys were ineffective for failing to raise a claim challenging trial counsel's failure to recognize that petitioner had a right to allocution.

September 9, 2004, Opinion and Order, the court concluded that
petitioner's nineteenth ground for relief was procedurally
defaulted and that appellate counsel ineffectiveness did not
constitute cause and prejudice sufficient to excuse the default of
that claim.

The court concluded that, under Ohio law, the fact that
petitioner had not been afforded his right to allocution was an
issue that any reasonable attorney would have recognized and raised
on appeal. Doc. No. 61, pp. 29-30. The court went on to recognize
that, had appellate counsel raised the issue, they almost certainly
would have prevailed and petitioner would have been entitled to re-
sentencing. Thus, the court concluded that appellate counsel
performed deficiently and that petitioner was prejudiced by the
deficient performance. However, the court further concluded that
because there is no federal constitutional right to allocution,
petitioner's nineteenth ground for relief was without merit and,
accordingly, he was not prejudiced by appellate counsel's
ineffectiveness under the cause and prejudice test. *Id*. at 30.

Similar reasoning compels the court to reject petitioner's
claim that his appellate attorneys were ineffective for failing to
raise a claim challenging trial counsel's failure to recognize that
petitioner had a right to allocution. To find that petitioner's
appellate counsel ineffectiveness claim warrants relief in this
habeas corpus proceeding, this court would have to find that
petitioner's trial attorneys and appellate attorneys were
ineffective as a matter of federal constitutional law for failing
to protect a right under a state rule, even though that failure did
not deny petitioner fundamental due process. This the court cannot

find.

The court recognizes that Rule 32(A)(1) of the Ohio Rules of Criminal Procedure entitles criminal defendants to a right to allocution at sentencing, that compliance with the rule is mandatory, and that noncompliance requires re-sentencing. *See, e.g., Campbell*, 90 Ohio St. 3d at 325-26; *Defiance v. Cannon*, 70 Ohio App. 3d 821, 828, 592 N.E.2d 884 (1990); *State v. Davis*, 13 Ohio App. 3d 265, 268-69, 469 N.E.2d 83 (1984); *State v. Hays,* 2 Ohio App. 3d 376, 377, 442 N.E.2d 127 (1982). The court also recognizes that, under Ohio law, "[a] Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *Green*, 90 Ohio St. 3d at 359-360.

As to the right to allocution in Ohio under Rule 32(A)(1), at least one state decision has held that "only the trial court has a duty with respect to affording a defendant the right to allocution. Because counsel had no duty, his omission to advise can have been neither deficient nor prejudicial." *Cannon,* 70 Ohio App. 3d at 827. Petitioner, through his Rule 26(B) application to reopen his direct appeal, alerted both the court of appeals and the Supreme Court of Ohio that he was not afforded his right to allocution by raising a claim of ineffective assistance of appellate counsel for the failure to raise a claim challenging the denial. In addressing the denial of petitioner's right to allocution in the context of an ineffective assistance of appellate counsel claim, neither the court of appeals nor the Ohio Supreme Court found error. In rejecting petitioner's Rule 26(B) application, the court of appeals noted that the appellate counsel ineffectiveness claims offered by

60

petitioner were "not 'especially compelling.'" App. Vol. VIII, pp. 146-47.  In rejecting petitioner's appeal from the court of appeals' decision denying his Rule 26(B) application, the Ohio Supreme Court stated, "We have reviewed Goff's assertions of deficient performance by appellate counsel and find that Goff has failed to raise 'a genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal' before the court of appeals, as required by App. R. 26(B)(5)." *Goff*, 98 Ohio St.3d at 328-29.

Furthermore, the failure of the trial court to afford a defendant allocution before sentencing is not a constitutional error.  Regardless of what Ohio law provides by rule, or what common law provided before that, the fact remains that there is no right to allocution under the federal constitution. *Hill v. United States*, 368 U.S. 424, 428 (1962); *Cooey v. Coyle*, 289 F.3d 882, 912 (6th Cir. 2002); *United States v. Waters*, 158 F.3d 933, 943 (6th Cir. 1998); *Pasquarille v. United States*, 130 F.3d 1220, 1223 (6th Cir. 1997); *United States v. Coffey*, 871 F.2d 39, 40 (6th Cir. 1989).  Because federal habeas corpus relief exists only to redress violations of federal constitutional rights, the court cannot find that trial or appellate counsel performed deficiently in failing to protect petitioner's right under state rule where the denial did not deprive petitioner of fundamental fairness.  Likewise, the court cannot find, as a matter of federal constitutional law, that petitioner was prejudiced either by trial counsel's failure to recognize that he was entitled to allocution or by appellate counsel's failure to raise a claim challenging trial counsel's deficient performance in this regard. *See Cooey v. Anderson*, 988

61

F.Supp. 1066, 1093 (N.D. Ohio 1997)(finding no trial counsel or appellate counsel ineffectiveness in connection with the denial of the petitioner's right to allocution).

The court concludes that sub-part (F) of petitioner's thirteenth ground for relief is without merit.

Sub-Part (J) – Trial Counsel's Failure to Exclude References to Petitioner's Request for Counsel During Questioning.

In sub-part (J) of his thirteenth ground for relief, petitioner argues that his appellate attorneys were ineffective for failing to raise a claim challenging trial counsel's failure to exclude references during the trial phase of the case to the fact that, when petitioner was questioned about the murder of Myrtle Rutledge, he asked to speak to an attorney.[6]  Once during direct examination of Sheriff Fizer, then a second time during direct examination of Detective Williams, the prosecution elicited references to the fact that petitioner initially answered questions but then stopped by stating that he wanted to speak to an attorney. Defense counsel did not object.  Arguing that reference by the prosecution to a defendant's prearrest silence or request for counsel violates the defendant's Fifth Amendment privilege against self-incrimination, petitioner argues that his appellate attorneys were ineffective for failing to raise a claim challenging trial counsel's failure to object to the references described above.  The

---

[6]        Although the appellate counsel ineffectiveness claim that petitioner actually presented to the state courts in his Rule 26(B) application for reopening differs somewhat from the instant claim, the court will address it on the merits.  Petitioner argued to the state courts that his appellate attorneys were ineffective for failing to raise a claim challenging the fact that the jury was permitted to hear that petitioner had requested an attorney during police questioning.   Petitioner argues herein that his appellate attorneys were ineffective for failing to raise a claim challenging trial counsel's failure to object to references to petitioner's request for counsel.

court finds no ineffectiveness on appellate counsel's part.

Petitioner relies on the Sixth Circuit's decision in *Combs v. Coyle*, 205 F.3d 269 (6th Cir. 2000), but his reliance is misplaced. First, it is important to note that petitioner's appellate counsel did not have the benefit of the *Combs* decision when they litigated petitioner's direct appeal. Further, the facts in *Combs* are readily distiguishable from the facts in petitioner's case. In *Combs*, the Sixth Circuit held that the use of a defendant's prearrest silence as substantive evidence of guilt violates the Fifth Amendment's privilege against self-incrimination and that Combs's defense counsel performed unreasonably and to Combs's prejudice in failing to object when the prosecution used Combs's "talk to my lawyer" statement as substantive evidence of Combs's guilt. *Combs*, 205 F.3d at 283-86. In *Combs*, the prosecution emphasized the defendant's "talk to my lawyer" statement during closing arguments and offered the statement as substantive evidence of the defendant's guilt. When reference to the defendant's "talk to my lawyer" statement was first made during the prosecution's direct examination of a police officer, the trial court *sua sponte* gave a special jury instruction that was intended to limit any damage caused by the reference, but that actually "encouraged the jury to use Combs's prearrest silence as substantive evidence of purpose and prior calculation and design–the key issues at trial," *Id.*, at 286 n.11, thereby exacerbating the damage. Thus, in *Combs*, the violation of the petitioner's due process rights and Fifth Amendment privilege against self-incrimination, as well as defense counsel's failure to object thereto, were egregious and obvious.

In petitioner's case, there were two isolated references to

petitioner's post-*Miranda* silence/request for counsel, one during the prosecution's direct examination of Sheriff Fizer and the other during the prosecution's direct examination of Detective Williams. These references amounted to nothing more than showing that, after initially answering questions about his addiction to crack cocaine, the manner in which he obtained money to support his habit, and his whereabouts on the evening of September 15, 1994, and early morning hours of September 16, 1994, petitioner stopped answering questions by stating that he wanted an attorney. The prosecution did not refer to the request for counsel during closing arguments, much less offer the request for counsel as substantive evidence of petitioner's guilt. Further, reference to petitioner's post-*Miranda* request for counsel was not exacerbated by special jury instructions, as was the case in *Combs*.

The court is not persuaded that trial counsel performed deficiently or to petitioner's prejudice in failing to object to the isolated, benign references to petitioner's post-*Miranda* request for counsel. Consequently, the court cannot find that appellate counsel were ineffective for failing to raise a claim challenging defense counsel's performance in this regard. Under *Mapes*, the issue cannot be characterized as significant, obvious, or clearly stronger than the issues that were raised, and appellate counsel did not have the benefit of the *Combs* decision to support a claim of trial counsel ineffectiveness. The court finds that sub-part (J) of petitioner's thirteenth ground for relief is without merit.

Sub-Part (K) – Trial Counsel's Failure to Raise "Actual Conflict of Interests" Issue Known to Counsel Before Trial but Not

64

<u>Raised until Mitigation Phase</u>.

In sub-part (K) of his thirteenth ground for relief, petitioner argues that his appellate attorneys were ineffective for failing to raise a claim challenging trial counsel's failure to raise until the mitigation phase an "actual conflict of interests" of which they were aware prior to trial. It was disclosed prior to the beginning of petitioner's mitigation hearing that one of the prosecutors, Mr. Moyer, had represented petitioner and his sister as a guardian *ad litem* in 1988, and that two other members of the prosecutor's office who did not do any work on petitioner's murder case, Mr. Carey and Mr. Gray, also had served as guardians *ad litem* for petitioner at some point. JA Vol. XV, pp. 2458-2467. During the on-the-record exchange before petitioner's mitigation hearing, defense counsel, the prosecutors, the trial court, and petitioner himself agreed that there was no conflict of interest. However, petitioner argues that his appellate attorneys were ineffective for failing to raise a claim challenging the failure of his trial attorneys to raise the matter sooner.

Turning to the *Mapes* factors, the court finds that the issue was not significant or obvious, that there was contrary authority regarding the issue, and that the issue was by no means clearly stronger than the issues that were raised. Consequently, appellate counsel did not perform deficiently or to petitioner's prejudice in failing to raise a claim challenging trial counsel's failure to raise earlier than they did that a potential conflict of interest might require disqualification of certain members of the prosecutor's office. The court finds that the issue was not significant and obvious because a review of the record reveals that

the matter was thoroughly discussed and resolved. More importantly, no prejudice was apparent from the fact that Assistant Prosecutor Moyer, as well as two other members of the prosecutor's office, had, some years earlier, represented petitioner as guardians *ad litem*. JA Vol. XV, pp. 2458-2467. Defense counsel, petitioner, the prosecutors, and the trial court all agreed that there was no conflict of interest requiring disqualification of the prosecutors in petitioner's case because none of the prosecutors had learned any information while representing petitioner as guardians *ad litem* that they could have used against him, or otherwise put to improper use, in prosecuting him for the aggravated murder of Myrtle Rutledge. JA Vol. XV, pp. 2461, 2466-67.

Petitioner has not cited, nor is the court is aware of, any Ohio decisions that would have supported his argument and alerted appellate counsel to raise a claim challenging trial counsel's failure to raise the matter earlier. However, there was authority arguably contradicting petitioner's argument. As a general rule, regarding claims challenging the failure to disqualify a prosecutor or prosecutor's office stemming from the prosecutor's previous representation of the defendant in other matters, the mere appearance of impropriety or prejudice is insufficient to warrant disqualification; rather, there must be a demonstration of actual prejudice. *See e.g., State v. Sweet*, 72 Ohio St. 3d 375, 377, 650 N.E.2d 450 (1995); *State v. Hodges*, 107 Ohio App. 3d 578, 586-87, 669 N.E.2d 256 (1995). *See also State v. Freeman*, 20 Ohio St. 3d 55, 57, 485 N.E.2d 1043 (1985)(holding with respect to a claim challenging the fact that several judges had testified during grand

66

jury proceedings that "[n]o prejudice will be presumed where none is demonstrated.").

The court is not persuaded that this issue was clearly stronger than the issues that appellate counsel did raise, or that this was the sort of issue that only an incompetent attorney would have omitted.  The court cannot find that petitioner's appellate attorneys performed unreasonably or to petitioner's prejudice in failing to raise a claim challenging trial counsel's failure to raise earlier than they did the possibility that Assistant Prosecutor Moyer had a conflict of interest that should have disqualified him.  Sub-part (K) of petitioner's thirteenth ground for relief is without merit.

## I. Fourteenth Ground for Relief

> Petitioner's fourteenth ground for relief is as follows:
> When Petitioner Goff timely requested special jury instructions, which were constitutionally pertinent to his trial, the refusal by the trial court to give them constitutes a violation of his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

Petitioner requested that the trial court instruct the jury to consider mercy in their deliberations.  JA Vol. XV, pp. 2451-52. The court of appeals held that the trial court did not err in rejecting defendant's proposed instruction insofar as it requested that mercy be considered as a mitigating factor, noting that it was well established that a capital defendant is not entitled to an instruction that mercy may be deemed a mitigating factor.  *Goff*, 1997 WL 194898 at *8 (citing *State v. Garner*, 74 Ohio St.3d 49, 57, 656 N.E.2d 623 (1995) and *State v. Lorraine*, 66 Ohio St.3d 414, 417-18, 613 N.E.2d 212 (1993)).  The Ohio Supreme Court also held that the trial court was not required to instruct the jury on

67

mercy. *Goff*, 82 Ohio St.3d at 131 (citing *State v. Allen*, 73 Ohio St.3d 626, 638, 653 N.E.2d 675 (1995) and *Lorraine*, 66 Ohio St.3d at 417).

The state courts correctly held that under Ohio law, the trial court was not required to instruct that mercy could be considered as a mitigating factor. In *Lorraine*, 66 Ohio St.3d at 417-18, the Ohio Supreme Court stated, "Permitting a jury to consider mercy, which is not a mitigating factor and thus irrelevant to sentencing, would violate the well-established principle that the death penalty must not be administered in an arbitrary, capricious, or unpredictable manner." Where the trial court instructs the jury in accordance with state law and sufficiently addresses the matters of law at issue, no error results, and the petitioner is not entitled to habeas relief. *White*, 431 F.3d at 534-35.

The instruction requested by petitioner was also not required under federal law, and arguably was prohibited under federal law. The Sixth Circuit in *Mapes v. Coyle*, 171 F.3d 408, 414-15 (6th Cir. 1999), rejected the argument that the petitioner was entitled to a "merciful discretion" instruction. The court stated:

> [A]n instruction to a death-sentence jury that it may disregard the statutory criteria for imposing a death sentence may be constitutionally impermissible in light of the probability that such an instruction would result in arbitrary and unpredictable results. *See California v. Brown*, 479 U.S. 538, 541, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987). According to the Court, "sentencers may not be given unbridled discretion in determining the fates of those charged with capital offenses." *Id.* Thus, an instruction that the jury should not be swayed by "mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling" was not only unobjectionable in *Brown*, it "serve[d] the useful purpose of confining the jury's imposition of the death sentence by cautioning it against reliance on [irrelevant],

68

> extraneous emotional factors." *Id.* at 542, 543, 107
> S.Ct. 837, 93 L.Ed.2d 934. Thus, there is no merit
> whatsoever to Mapes's claimed entitlement to a "merciful
> discretion" instruction, in light of the likely tendency
> of such an instruction to lead to arbitrary differences
> in whom is selected to be sentenced to death.

*Id.* at 415-16. *See also Scott*, 209 F.3d at 877-78 (upholding
instruction that jury "must not be influenced by any consideration
of sympathy or prejudice."). Here, the Ohio courts properly
applied *Brown* in holding that the trial court was not required to
instruct the jury to consider mercy as a mitigating factor outside
the Ohio statutory weighing scheme. Petitioner is not entitled to
relief on this ground.

## J. Fifteenth Ground for Relief

Petitioner's fifteenth ground for relief is as follows:

> When the trial court refuses to consider substance abuse
> as an important mitigating factor in its opinion, but
> instead equates this drug impairment with culpability,
> the result is an arbitrary sentence in violation of
> Petitioner Goff's Fourth, Fifth, Sixth, Eighth, and
> Fourteenth Amendments to the U.S. Constitution.

In mitigation, petitioner presented evidence concerning his
substance abuse problems. In his decision independently weighing
the aggravating circumstances against the mitigating factors, the
trial court stated:

> The Defendant has argued that he suffered from alcohol
> and/or drug impairment at the time of the offense.
>
> Although there was evidence that the defendant had used
> crack cocaine earlier in the day, there was no evidence
> that at the time of the offense he had used alcohol or
> was under the influence of either alcohol or cocaine at
> the time of the offense. Furthermore, the use of alcohol
> or drugs is not an excuse for committing a crime.
>
> The Court assigns no weight to this as a mitigating
> factor.

JA Vol. II, pp. 487-88.  Petitioner argues that this comment
demonstrates that the trial judge considered petitioner's substance
abuse problems against him rather than treating them as a mitigating
factor.

Petitioner's argument was rejected on direct appeal.  The court
of appeals noted that under Ohio law, the trial court is not
required to accept as mitigating everything offered by the
defendant, and that "the assessment of and weight to be given to
mitigating evidence are matters for the trial court's
determination."  *Goff*, 1997 WL 197898 at *14 (citing *State v.
Steffen*, 31 Ohio St.3d 111, 129, 509 N.E.2d 383 (1987)( stating that
the trial court in its own independent weighing process may properly
choose to assign absolutely no weight to the defendant's evidence
if it considers it to be non-mitigating)).  The court of appeals
noted that while the trial court's comments about alcohol or drug
use not being an excuse for committing a crime "is arguably
inartful," the trial court did not require that drug or alcohol use
arise to the level of a defense before it could be considered as a
mitigating factor; rather, the trial court considered petitioner's
drug and alcohol use in the weighing process and chose to assign
absolutely no weight to it.  *Id*. at *14-15.

The Ohio Supreme Court agreed with the decision of the court
of appeals on this issue.  The court noted that the trial court's
statement that it "assigns no weight to this as a mitigating factor"
indicated that the trial court did not refuse to consider alcohol
and drug abuse as a mitigating factor.  *Goff*, 82 Ohio St.3d at 133.
The court further stated that while the trial court's opinion might
be read as suggesting that drug use was not a mitigating factor

70

because there was no evidence that petitioner was using drugs or alcohol at the time of the offence, an incorrect statement of law under *State v. Holloway*, 38 Ohio St.3d 239, 527 N.E.2d 831 (1988), the sentencing opinion, when considered in its entirety, was not erroneous. *Id.* Finally, the Ohio Supreme Court indicated that any error would be cured by the independent review process. *Id.*

A defendant's due process rights may be infringed upon by a state's failure to adhere to its own sentencing laws. *Fox v. Coyle*, 271 F.3d 658, 665-66 (6th Cir. 2001)(citing *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980)). However, in this case, the Ohio courts determined that the trial court's sentencing opinion did not constitute error under Ohio law. The fact that the trial court stated that it was assigning no weight to the factor of defendant's alcohol and drug impairment indicates that the trial court did consider this mitigating evidence in the weighing process.

In addition, the Ohio Supreme Court held that any error in the trial court's weighing analysis was corrected by independent review on appeal. In *Clemons v. Mississippi*, 494 U.S. 738, 750 (1990), the Supreme Court held that certain errors in the weighing of aggravating circumstances against mitigating factors may be cured by independent review at the appellate level. The Ohio Supreme Court has implemented this rule, stating, "[I]t is within the province of this court to conduct its own careful appellant reweighing of the aggravating circumstances against mitigating factors to produce a 'measured consistent application' of the death penalty which would be in no way unfair to the defendant." *State v. Lott*, 51 Ohio St.3d 160, 170, 555 N.E.2d 293 (1990)(citing *Clemons*). No constitutional claim is stated where a state's highest

71

court independently reweighs the aggravating circumstances and the mitigating factors and cures any error through independent re-evaluation of the appropriateness of the death sentence. *Fox*, 271 F.3d at 667.

Both the court of appeals and the Ohio Supreme Court conducted an independent review of whether the aggravating circumstances in petitioner's case outweighed the mitigating factors beyond a reasonable doubt as required under Ohio Rev. Code §2929.05. The court of appeals addressed the evidence concerning petitioner's substance abuse problems, noting that petitioner started drinking and using marijuana before he was ten, that he subsequently engaged in poly-substance and alcohol abuse until the late 1980s, that he started using substances again in late 1992-1993, and that he developed a crack cocaine dependency for three months in 1994. *Goff*, 1997 WL 194898 at *28. The court also noted that petitioner's mother was oblivious to his alcohol and substance abuse. *Id*. In regard to petitioner's evidence of his alcohol and substance abuse, the court of appeals stated, "We cannot say that these factors, taken either in isolation or together with the other factors offered in mitigation, weigh significantly against the aggravated circumstances of aggravated robbery and aggravated burglary. We therefore assign very little weight to this evidence." *Id*. at *30.

The Ohio Supreme Court also considered petitioner's substance abuse history in the weighing process. The court stated:

> Under R.C. 2929.04(B)(7)(the catchall provision), we consider appellant's history of substance abuse, including alcohol, which he began in earnest when he was eleven. He also used marijuana, "speed," and inhalants. His crack cocaine dependency occurred during the period of several months in 1994, leading to this crime. However, we give little weight to appellant's voluntary

72

substance abuse.

Petitioner relies on *Parker v. Dugger*, 498 U.S. 308 (1991), in which the Supreme Court held that the Florida Supreme Court acted arbitrarily and capriciously by failing to adequately treat the defendant's nonstatutory mitigating evidence. However, that case is distinguishable. In *Parker*, the record contained substantial uncontroverted evidence favoring mitigation, and although the trial court's order did not state explicitly what effect he gave this evidence, his findings indicated that he considered the mitigation evidence before imposing sentence. *Id.* at 313-318. However, the Supreme Court held that the Florida Supreme Court erroneously concluded that the trial judge found no mitigating circumstances to balance against the aggravating factors, and that in light of this mistaken conclusion, the state supreme court's independent reweighing of the sentence was flawed and inadequate. *Id.* at 318-320.

In contrast, both the court of appeals and the Ohio Supreme Court found in petitioner's case that the trial court did consider the evidence of petitioner's alcohol and substance abuse problems in the weighing process, but that the trial court chose to assign no weight to that evidence. *See Goff*, 82 Ohio St.3d at 133; *Goff*, 1997 WL 194898 at *15. This reasonable interpretation of the trial court's opinion is not arbitrary and capricious or unsupported by the record. Since the reweighing process of the Ohio appellate courts in this case is not based on a mistaken interpretation of the trial court's sentencing opinion, it was constitutionally adequate to support the harmless error analysis of the Ohio Supreme Court.

Petitioner is not entitled to habeas relief on his fifteenth

73

ground for relief.

**K. Seventeenth Ground for Relief:**

Petitioner's seventeenth ground for relief is as follows:

Petitioner Goff was denied the effective assistance of counsel during the trial phase and the mitigation phase of his capital case as guaranteed by the Fourth, Fifth, sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

Petitioner raised numerous claims of ineffective assistance of trial counsel in his petition, labeled as sub-parts (A) through (O) of the seventeenth ground for relief.

On August 19, 2003, this court issued an opinion and order concluding that the following sub-parts were barred by procedural default, due to petitioner's failure to raise them on direct appeal: E, F, G, K, M, N, and O. Doc. No. 48, pp. 43-44. The court further found that the following sub-parts were procedurally defaulted due to petitioner's failure to raise them in a state postconviction action: D, H, J, and L. Doc. No. 48, pp. 43-44. Thus, those sub-parts have been dismissed and will not be addressed on the merits. The only sub-parts now before the court for a review on the merits are sub-parts A, B, C, and I. Those sub-parts are as follows:

(A) Trial counsel failed to object to the trial court's emphasizing the death penalty at voir dire;

(B) Trial counsel failed to inquire adequately about various mitigating circumstances particular to Petitioner Goff;

(C) Trial counsel failed to object to improper argument on the part of the prosecution at the mitigation hearing;

(I) Trial counsel failed to investigate possible resolution of the entire case;

Petition, Doc. No. 13, ¶ 183.

74

As previously stated, to establish a claim of ineffective assistance of counsel, petitioner must show that counsel's performance was deficient, in that counsel made errors so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment, and further that the deficient performance prejudiced the defense to the extent that defendant was deprived of a fair trial. *Strickland*, 466 U.S. at 687.

Sub-Part (A) – Trial Counsel Failed to Object to the Trial Court's Emphasizing the Death Penalty During Voir Dire.

In sub-part (A) of his seventeenth ground for relief, petitioner argues that his trial attorneys were ineffective for failing to object to the trial court emphasizing the death penalty during voir dire. Petitioner raised this claim on direct appeal to the Supreme Court of Ohio as Proposition of Law IX(A). There, he argued more expansively that the trial court, after the prosecution and defense counsel had each finished their questioning, asked each prospective juror whether he or she would be willing, under appropriate circumstances, to sign a death verdict. App. Vol. IV, p 104. Petitioner argued that this placed undue emphasis on the death penalty because the last thing that each prospective juror heard before leaving the courtroom was a question of about signing a death verdict.

The Ohio Supreme Court rejected petitioner's claim under the two-part test set forth in *Strickland*. Specifically, the Ohio Supreme Court concluded that there was no error in the trial court's line of questioning, and that, as a result, there was neither a deficient performance nor prejudice on the part of petitioner's trial attorneys in not objecting. *Goff*, 82 Ohio St. 3d at 139-40.

75

Citing *State v. Evans*, 63 Ohio St. 3d 231, 249-250, 586 N.E.2d 1042 (1992), and *State v. Rogers*, 17 Ohio St. 3d 174, 177-78, 478 N.E.2d 984 (1985), the Ohio Supreme Court explained that "we have upheld similar questioning in previous cases[,]" and concluded that "[t]herefore, the failure to object to this questioning was not ineffective." *Id*.

The court is not persuaded that the Ohio Supreme Court's decision unreasonably applied or contravened clearly established Supreme Court precedent. That is, the court is not persuaded that trial counsel performed unreasonably or to petitioner's prejudice in failing to object to the trial court questioning the prospective jurors about whether they could, under the appropriate circumstances, sign a death verdict. Regarding the deficient performance prong of the *Strickland* test, it bears repeating that the Ohio Supreme Court had upheld similar questioning in previous cases. It also bears noting that, as a matter of federal law, "the trial court retains great latitude in deciding what questions should be asked on *voir dire*." *Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991). In light of the foregoing, the court cannot find that trial counsel performed unreanobly in failing to object to the trial court questioning the prospective jurors about whether they could, under the appropriate circumstances, sign a death verdict.

For similar reasons, the court also finds that petitioner cannot satisfy the prejudice prong of the *Strickland* test. Given the state of the law at the time of petitioner's trial, the court cannot find that there is a reasonable probability that the outcome of the voir dire process or of petitioner's sentencing hearing would have been different had counsel objected, because any such objection

76

most likely would have been overruled.

For the foregoing reasons, the court concludes that the Ohio Supreme Court's decision rejecting petitioner's trial counsel ineffectiveness claim did not unreasonably apply or contravene clearly established Supreme Court precedent. Accordingly, sub-part (A) of petitioner's seventeenth ground for relief is without merit.

Sub-Part (B) – Trial Counsel Failed to Inquire Adequately about Various Mitigating Circumstances Particular to Petitioner Goff.

In sub-part (B) of his seventeenth ground for relief, petitioner argues that his trial attorneys were ineffective for failing to inquire during voir dire about various mitigating circumstances particular to petitioner. Petitioner raised this claim on direct appeal to the Supreme Court of Ohio as Proposition of Law No. IX(B). There, he argued that, although the prosecution during voir dire went over each element of every offense and aggravating factor in excruciating detail, defense counsel made no inquiry regarding the mitigating factors that they intended to present later.

The Ohio Supreme Court rejected petitioner's claim under the two-part *Strickland* test, finding that there was "no error." *Goff*, 82 Ohio St. 3d at 140. Citing *State v. Wilson*, 74 Ohio St. 3d 381, 386, 659 N.E.2d 292 (1996), and *State v. Lundgren*, 73 Ohio St. 3d 474, 481, 653 N.E.2d 304 (1995), the court noted that there was no requirement for allowing questioning on individual mitigating factors. The court went on to conclude, "Since no requirement exists for such questioning, defense counsel did not err in failing, for whatever reason, to attempt to question the jurors on specific factors." *Goff*, 82 Ohio St.3d at 140. The court went on to point

77

out that defense counsel did pose some questions to prospective jurors about the probable testimony of a psychologist during any penalty hearing, obtained their views about such testimony, and indicated that the defense would present a great deal of information about petitioner's family background. *Id*.

The court is not persuaded that the Ohio Supreme Court's decision unreasonably applied or contravened clearly established Supreme Court precedent. The court is not persuaded that trial counsel performed unreasonably or to petitioner's prejudice in failing to ask prospective jurors about the mitigating factors that they planned to present in the event the case reached the sentencing phase.

First, trial counsel did not violate any duty owed to petitioner so as to render their performance objectively unreasonable. Petitioner has not cited, nor is this court aware of, any case holding that the failure to quiz prospective jurors about whatever mitigating factors might be relied upon constitutes ineffective assistance of counsel. In fact, absent strong evidence to the contrary, counsel's actions during voir dire are presumed to be matters of strategy. *See, e.g., Davie v. Mitchell*, 291 F. Supp. 2d 573, 592-93 (N.D. Ohio 2003) (finding no ineffective assistance for counsel's failure to address sentencing issues during *voir dire*), citing *Miller v. Francis*, 269 F.3d 609, 615-16 (6th Cir. 2001) ("Counsel's actions during voir dire are presumed to be matters of trial strategy.")). It is clear from the transcript of the voir dire proceedings that counsel framed their questions to each prospective juror based on the juror's questionnaire and various answers given by that juror during voir dire questioning,

as well as on issues that were paramount to petitioner's case, such as the presumption of innocence, judging the credibility of witnesses, and the effect petitioner's failure to take the stand might have on the juror.

Even assuming that counsel had some sort of duty to address mitigating factors during voir dire–an assumption that finds no support in the case law–petitioner's claim would still fail. As the Ohio Supreme Court suggested in its decision, petitioner's claim is factually inaccurate insofar as defense counsel did pose questions to most of the prospective jurors about certain mitigating factors specific to petitioner's case. Defense counsel asked nearly every prospective juror not only whether they would be receptive to testimony by a psychologist, but also whether they would consider and give effect to other factors from petitioner's background. For example, defense counsel asked Mrs. Bevan whether she would consider fairly testimony by a psychologist, as well as evidence establishing that petitioner had a learning disability, had a bad home life, came from a single parent home, and had an absentee and/or neglectful parent. JA Vol. II, pp. 280-81. Mrs. Scanlon was asked whether she could consider the testimony of a psychologist, and evidence demonstrating that petitioner had a learning disability, grew up with no father in the home, and had a very deprived background. JA Vol. III, pp. 421, 424. Defense counsel asked Ms. Morris if she would consider the testimony of a psychologist, as well as factors such as petitioner's deprived background and poverty, learning disability, foster placements, "all kinds of trauma," and emotional trauma. JA Vol. IV, pp. 642-43. A review of the entire voir dire transcript reveals that defense counsel asked similar questions of

nearly every prospective juror.

Counsel did not perform deficiently or to petitioner's prejudice in this regard.  The Ohio Supreme Court's decision rejecting this claim did not contravene or unreasonably apply controlling Supreme Court precedent.  Sub-part (B) of petitioner's seventeenth ground for relief is without merit.

Sub-Part (C) – Trial Counsel Failed to Object to Improper Arguments by the Prosecution During the Mitigation Hearing.

In sub-part (C) of his seventeenth ground for relief, petitioner argues that his trial attorneys "failed to object to improper argument on the part of the prosecution at the mitigation hearing."  Petition, Doc. No. 13, p. 42.  Beyond that blanket assertion, petitioner failed to elaborate in any of his subsequent briefs on which arguments by the prosecution he viewed as improper and to which, in his view, trial counsel were duty-bound to object.  The only claim that petitioner raised on direct appeal, and therefore preserved for review in this habeas corpus proceeding, was that trial counsel were ineffective for failing to object when the prosecution, during mitigation phase closing arguments, repeatedly emphasized non-statutory aggravating circumstances.  JA Vol. IV, p. 105.  In so arguing, petitioner incorporated by reference the proposition of law that he had raised challenging the prosecution's mitigation phase closing argument for emphasizing "other acts" by petitioner, petitioner's character defects, petitioner's inability to feel remorse, public sentiment and public standards of behavior, petitioner's inability to conform to a structured environment, petitioner's future dangerousness, and the lack of evidence suggesting insanity or incompetency on petitioner's part.  JA Vol.

80

IV, pp. 90, 105.  The Ohio Supreme Court rejected not only petitioner's claims challenging the prosecutor's arguments, but also petitioner's claims challenging trial counsel's failure to object to those arguments.

In rejecting petitioner's claim challenging the prosecutor's mitigation phase closing arguments, the Ohio Supreme Court held that petitioner had mischaracterized the prosecution's arguments, and that all but one of the arguments were proper and based on evidence and testimony presented by the defense. *Goff*, 82 Ohio St.3d at 135. The only improper argument, *i.e.*, the prosecution's argument urging the jury to consider standards of behavior, was immediately objected to by defense counsel and addressed by the trial court with a curative instruction. *Id*. The Ohio Supreme Court went on to reject petitioner's claim challenging trial counsel's failure to object to improper arguments made by the prosecution during mitigation phase closing arguments, holding that defense counsel had in fact objected to the only argument that was improper, *i.e.*, the argument regarding standards of behavior. *Id*. at 280-81.

The Ohio Supreme Court's decision rejecting this particular trial counsel ineffectiveness claim did not contravene or unreasonably apply clearly established federal law.  Petitioner has failed to demonstrate that he received ineffective assistance of counsel in this regard because it does not appear that, had counsel objected to various remarks from the prosecutor's guilt phase closing argument, the outcome of the proceedings probably would have been different.  Review of an allegation of ineffective assistance of counsel begins with a strong presumption that counsel was competent.  *Strickland,* 466 U.S. at 689; *see also O'Hara v.*

81

*Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). It is within the realm of reasonable trial strategy not to repeatedly object during opposing counsel's closing argument, where counsel harbors doubts about the effectiveness of objections and curative instructions. *See Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006); *see also Werts v. Vaughn*, 228 F.3d 178, 204-205 (3rd Cir. 2000); *United States v. Necoechea*, 986 F.2d 1273, 1278 (9th Cir. 1993); *Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992). *But see Washington v. Hofbauer*, 228 F.3d 689, 706 n.11 (6th Cir. 2000) (suggesting that failure to object because counsel doubts effectiveness of objection and curative instruction is reasonable only where it is not clear that challenged conduct was actually improper). Moreover, proving prejudice under *Strickland* in this case involves an "exacting standard" of showing that, but for counsel's failure to object to the prosecutor's comments, there is a reasonable probability that the jury's verdicts would have been different. *Hinkle v. Randle,* 271 F.3d 239, 245-46 (6th Cir. 2001).

This court has reviewed the prosecutor's guilt phase closing argument in its totality, as well as the mitigation case presented by defense counsel. This court agrees with the Ohio Supreme Court that all but one of the challenged comments from the prosecutor's closing argument were proper and that trial counsel were not ineffective in failing to object to those comments. This court cannot find that the Ohio Supreme Court's decision rejecting petitioner's trial counsel ineffectiveness claim contravened or unreasonably applied clearly established federal law.

After reviewing the prosecution's mitigation phase closing arguments, this court agrees with the Ohio Supreme Court's

conclusion that the challenged arguments were proper comments on the evidence and testimony presented by defense in an effort to establish mitigating factors. Challenged comments that the prosecution made, for example, calling into question petitioner's ability to conform to a structured environment, remarking on "other bad acts" by petitioner, and speculating as to petitioner's future dangerousness, were fair responses to the witnesses and evidence that defense counsel had presented in mitigation. These were not arguments encouraging the jury to consider non-statutory aggravating circumstances against petitioner, but rather arguments for why the aggravating circumstance outweighed beyond a reasonable doubt the mitigating factors that petitioner had attempted to establish. This court agrees with the Ohio Supreme Court's conclusion that petitioner had mischaracterized the comments. Because the challenged comments were proper, counsel cannot be regarded as ineffective for failing to object to them. *See, e.g., Johnson v. Smith*, 219 F. Supp. 2d 871, 881 (E.D. Mich. 2002) (holding trial counsel was not ineffective in failing to object to proper jury instructions).

Finally, trial counsel were not deficient in responding to the prosecution's argument urging the jury to consider societal standards of behavior. As the Ohio Supreme Court correctly observed, that argument was improper, counsel did object, and the trial court immediately gave an instruction telling the jury to disregard the comments about "enforcing the standards of behavior acceptable to society." JA Vol. XVI, p. 2687.

For the foregoing reasons, the court concludes that sub-part (C) of petitioner's seventeenth ground for relief is without merit.

83

Sub-Part (I) – Trial Counsel Failed to Investigate Possible Resolution of the Entire Case.

In sub-part (I), petitioner argues that his trial attorneys were ineffective for failing "to investigate possible resolution of the entire case." Petition, Doc. No. 13, p. 42. Absent further elaboration, which petitioner never provided in any subsequent briefs or pleadings, this court presumes, as respondent opines in her Return of Writ, Doc. No. 33, pp. 80-84, that this claim is the same claim that petitioner raised as the second claim for relief in his postconviction action. There, petitioner argued that his trial attorneys were ineffective for failing to properly advise him regarding the prosecution's offer of a plea agreement involving a sentence less than death. JA Vol. V, pp. 26-27. Petitioner explained that his attorneys had obtained a plea offer from the prosecution that would have resulted in a sentence less than death and that petitioner had turned it down against their advice. Petitioner then argued that his "counsel did not seek other assistance from attorneys more experienced in working with capitally charged defendants who have received pleas." *Id.*, p. 26, ¶ 29. Relying on an affidavit by Assistant Ohio Public Defender Richard Vickers regarding the duties of a trial attorney in obtaining and advising capitally charged defendants about plea offers, petitioner argued that his attorneys, by not seeking assistance from attorneys more experienced in the ways of persuading capitally charged defendants to accept plea offers, were ineffective for not doing more to persuade petitioner to accept the plea offer in his own case. *Id.*, ¶¶ 30-33. Petitioner went on to argue that, had counsel not breached their duty to him in this manner, his "decision on the

84

plea may well have been different." *Id.*, ¶ 32.

The last state court to address petitioner's claim, the Ohio Court of Appeals for the Twelfth Appellate District, rejected it on the merits.

> Considering Vickers' affidavit, we find that appellant's claim nevertheless fails. Appellant has failed to demonstrate that his trial counsel breached an essential duty owed to appellant. We reiterate that while Vickers' affidavit outlined what should be the best practice when plea bargaining in a death penalty case, it did not state how trial counsel's performance was ineffective. Nor did it suggest or conclude that trial counsel breached an essential duty to appellant which deprived appellant of substantial justice or a fair trial. Appellant has also failed to demonstrate any prejudicial factors which would entitle him to a hearing. His assertion that "[his] decision on the plea may well have been different" is a self-serving, broad, conclusory assertion which does not warrant an evidentiary hearing. *State v. Jackson* (1980), 64 Ohio St.2d 107, 111. In hindsight, appellant would undoubtedly do things differently if he could try his case again. However, hindsight is not a recognized legal principle. The trial court properly denied appellant's second claim for relief.

*Goff*, 2001 WL 208845 at *7.

The *Strickland* test applies to claims of ineffective assistance of counsel in connection with plea negotiations. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1984). To establish a claim of ineffective assistance of counsel regarding a decision to reject a plea offer and go to trial, the claimant must prove both that counsel performed deficiently in connection with the plea negotiations and that, but for the deficient performance, there is a reasonable probability that the petitioner would have accepted the plea offer. *Magana v. Hofbauer*, 263 F.3d 542, 547-48 (6th Cir. 2001). To grant relief on petitioner's claim, this Court would have to find not only that counsel performed deficiently and that, but

85

for counsel's deficient performance, there is a reasonable probability that petitioner would have accepted the prosecution's plea offer, but also that the state courts unreasonably applied clearly established federal law in not finding the same. Neither prong has been satisfied in this case.

Petitioner's bare allegations and the affidavit by Richard Vickers fail to demonstrate that petitioner's trial attorneys breached an essential duty or otherwise performed deficiently in connection with petitioner's decision to reject the prosecution's plea offer. Petitioner does not allege that his trial attorneys gave gross misadvice in connection with the prosecution's plea offer, *see Magana,* 263 F.3d at 548, or that his trial attorneys failed to convey the prosecution's plea offer to him, *see Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003). Petitioner's sole allegation is that his trial attorneys failed to obtain assistance from more experienced attorneys to persuade petitioner to accept the prosecution's plea offer.

Even assuming as correct petitioner's implicit assertion that his defense attorneys were inexperienced in litigating capital murder cases-an assumption that is not supported by the depositions of defense attorneys Michael Kelly and Bruce Wallace (Doc. Nos. 34 and 35)-the affidavit of Richard Vickers that petitioner submitted in support of his postconviction action does not establish that Mr. Kelly and Mr. Wallace performed deficiently. Mr. Kelly and Mr. Wallace undertook many of the tasks that Mr. Vickers identified in his affidavit as important when preparing to advise a capitally-charged defendant about accepting a plea that would result in a sentence less than death, such as realistically assessing the chance

86

that the defendant will be convicted and recognizing that any case that goes to trial can result in a death sentence. *Compare* JA Vol. V, pp. 140-41 *with* Doc. No. 35, pp. 13-14, 45-46, and Doc. No. 34, pp. 24-25. To the extent that Mr. Wallace and Mr. Kelly did not undertake every task set forth in Mr. Vickers' affidavit, such as advising their client about the many ways in which day-to-day life on death row is more restrictive than it is in the general population, Mr. Vickers' affidavit must be viewed as establishing the best possible practice for attorneys counseling capitally-charged defendants. In contrast, "[t]he Sixth Amendment guarantees competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

Petitioner's allegations also fail to meet the prejudice prong of the *Strickland* test. To satisfy the prejudice prong in the context of plea negotiations, a petitioner must demonstrate "that, but for his counsel's advice, there is a reasonable probability that he would have pleaded guilty." *Magana*, 263 F.3d at 547. In *Magana*, the Sixth Circuit suggested that a defendant's testimony that he would have pleaded guilty would be enough, requiring no additional objective evidence. *Id.*, at 548 n.1. Petitioner has produced no such testimony. Rather, petitioner relies on the bare allegation in his petition that, had his defense counsel made use of the services of someone with experience working with death row inmates, his decision on the plea "may well have been different." JA Vol. V, ¶ 32. This falls short of establishing the prejudice prong of the *Strickland* test.

For the foregoing reasons, the court concludes that sub-part (I) of petitioner's seventeenth ground for relief is without merit

and that the state courts did not unreasonably apply clearly established federal law in concluding the same.

**L. Eighteenth Ground for Relief:**

Petitioner's eighteenth ground for relief is as follows:

When the trial court commits numerous errors of constitutional significance throughout both phases of Petitioner Goff's case, the cumulative effect results in a violation of his Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

In his eighteenth ground for relief, petitioner argues that he was denied a fair trial due to the cumulative effect of the trial errors set forth in his petition, including the trial court's refusal to give his requested jury instructions, the trial court's conduct during voir dire, alleged prosecutorial misconduct, and the alleged failure to accord him the right of allocution. The court of appeals and the Ohio Supreme Court rejected petitioner's claim of cumulative error. *See Goff*, 1997 WL 194898 at *26; *Goff*, 82 Ohio St.3d at 140.

"The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). The Ohio courts' rejection of this claim is not contrary to Supreme Court case law so as to warrant relief under the AEDPA. *See id.* Petitioner's eighteenth ground for relief is denied.

**M. Twenty-first Ground for Relief:**

Petitioner's twenty-first ground for relief is as follows:

James Goff's death sentence is constitutionally infirm because Ohio's capital punishment system operates in an arbitrary and capricious manner.

Petitioner argues that Ohio's death penalty scheme is

88

unconstitutional in several respects. Petitioner's challenge to the constitutionality of Ohio's death penalty scheme was rejected on direct appeal by the Twelfth District Court of Appeals and by the Ohio Supreme Court. *See Goff*, 1997 WL 194898 at *26-27; *Goff*, 82 Ohio St.3d at 141.

The Sixth Circuit Court of Appeals has consistently upheld the constitutionality of Ohio's capital punishment scheme as a general matter, and has held that Ohio courts have not acted contrary to, or unreasonably applied, clearly established federal law as determined by the Supreme Court in dismissing constitutional challenges to Ohio's capital punishment scheme. *See, e.g., Williams v. Bagley*, 380 F.3d 932, 961-966 (6th Cir. 2004); *Smith v. Mitchell*, 348 F.3d 177, 214 (6th Cir. 2003). Petitioner's specific arguments are addressed as follows:

1.  The Ohio death penalty scheme makes no measurable contribution to acceptable goals of punishment.

Petitioner argues that the Ohio death penalty does not further the societal goals advanced to justify capital punishment, including deterrence of capital crimes by prospective offenders, incapacitation of dangerous criminals and the consequent prevention of crimes that they may otherwise commit in the future, and retribution. This argument was not asserted in the petition, and therefore is not properly before the court.

In any event, it is not well taken. The Supreme Court in *Gregg v. Georgia*, 428 U.S. 153, 179-82 (1976) rejected the argument that the death penalty is cruel and unusual punishment under the Eighth Amendment because it is excessive. The Sixth Circuit has also rejected the argument that Ohio's death penalty is invalid because it is not the least restrictive or an effective means of deterrence.

*See Greer v. Mitchell*, 264 F.3d 663, 690 (6th Cir. 2001). Imposing the death penalty for felony murder is also consistent with the Eighth Amendment. *Coleman v. Mitchell*, 268 F.3d 417, 442 (6th Cir. 2001)(citing *Tison v. Arizona*, 481 U.S. 137, 158 (1987)); *Greer*, 264 F.3d at 691 (rejecting argument that Ohio felony murder provision did not sufficiently narrow the class of murders eligible for the death penalty).

2.    The lack of an adequate appellate review undercuts the reliability of the Ohio scheme, and thus the death penalty, as established and administered under Ohio law, is disproportionate to the seriousness of the offenses committed.

Petitioner argues that the death penalty, as established and administered under Ohio law, is disproportionate to the seriousness of the offenses committed. He asserts that the Ohio death penalty scheme does not provide for a meaningful review of the death penalty because of the lack of meaningful data for comparison purposes and the failure to require written findings by the factfinder in both life and death cases concerning the weight given to mitigating factors. Petition ¶¶ 216, 220-223. He notes that the Ohio scheme does not require the factfinder to identify the mitigating factors upon which it relied in rejecting the death penalty. Petitioner argues that without such information, no significant comparison of cases is possible.

The Sixth Circuit has "held repeatedly that Ohio's system of proportionality review complies with the dictates of the Due Process Clause." *Williams*, 380 F.3d at 962 (citations omitted). Under *Pulley v. Harris*, 465 U.S. 37 (1984), no proportionality review is constitutionally required. *Smith*, 348 F.3d at 213-14 (comparative proportionality review is not constitutionally required); *Greer*, 264

F.3d at 691 (there is no Eighth Amendment right to proportionality review); *Cooey v. Coyle*, 289 F.3d 882, 923 (6th Cir. 2002)(rejecting argument that Ohio system was unconstitutional because it did not furnish adequate data to the Ohio Supreme Court to conduct an effective proportionality review); *Byrd v. Collins*, 209 F.3d 486, 539 (6th Cir. 2000)(rejecting argument that Ohio law fails to provide for an adequate proportionality review).  It is not unconstitutional for Ohio courts to compare only cases where the death penalty was actually imposed in conducting a proportionality review, while excluding cases where the death penalty was not imposed or sought in the analysis. *Williams*, 380 F.3d at 962-63. In addition, there is no constitutional requirement that a jury make specific findings authorizing the imposition of a death sentence to assist in future proportionality reviews. *Buell*, 274 F.3d at 368 (citing *Hildwin v. Florida*, 490 U.S. 638, 640-41 (1989)).

3.    The death penalty is applied in a racially discriminatory manner.

Petitioner asserts that race is a decisive factor in capital sentencing decisions, and that African-Americans and defendants who kill Caucasians are more likely to be sentenced to death.  Petition ¶ 214.  He further asserts that the death penalty scheme is unreliable due to the lack of adequate counsel, underfunding of counsel, and the role of race, ethnic origin and economic status. Petition ¶ 225.  Petitioner relies on statistics provided on the website of the American Civil Liberties Union indicating that eighty-one percent of the death sentences imposed nationwide have involved Caucasian victims, and that 178 African-Americans have been executed for killing a Caucasian, whereas only twelve Caucasians have been executed for killing an African-American.

91

To succeed on this claim, petitioner is required to present "exceptionally clear proof" before this court could infer that petitioner's prosecution in this case was the product of improper racial motivation. *McCleskey v. Kemp*, 481 U.S. 279, 797 (1987). In *McCleskey*, the Supreme Court concluded that statistics indicating that prosecutors sought the death penalty for seventy percent of African-American defendants with Caucasian victims, but for only nineteen percent of Caucasian defendants with African-American victims, was insufficient to meet this standard.

In this case, petitioner has cited only national statistics, not statistics relevant to the Ohio death penalty scheme. However, the Sixth Circuit has also rejected racial challenges to Ohio's death penalty scheme based on Ohio statistics. *See Coleman*, 268 F.3d at 441-42; *Smith*, 348 F.3d at 211; *Greer*, 264 F.3d at 690 (holding that petitioner "failed to demonstrate a constitutionally significant risk of racial bias affecting the Ohio capital sentencing process.")  The statistics presented by petitioner in this case are insufficient to establish that the Ohio system is racially biased.  The court further notes that petitioner is Caucasian.  Even assuming that petitioner has standing to advance the argument that the Ohio death penalty scheme is invalid because it discriminates against African-Americans, petitioner has made no showing that the death penalty was used against him because he is Caucasian. *See Cooey*, 289 F.3d at 923.  Petitioner has also made no showing that death penalty prosecutions in Ohio, either generally or his case in particular, involve inadequate or underfunded defense counsel.  Petitioner's bare allegations that Ohio insufficiently funds its capital cases is not enough to establish a constitutional

92

violation.  *Taylor v. Mitchell*, 296 F.Supp.2d 784, 838 (N.D.Ohio 2003).

4.    A substantial risk of arbitrariness and capriciousness
      underlies the Ohio scheme.

Petitioner asserts that the Ohio death penalty scheme poses a substantial risk of arbitrary and capricious sentencing.  Petition ¶ 215.  Petitioner claims that the statutes are unconstitutionally vague because no method exists to ensure the proper weighing of aggravating circumstances and mitigating factors.  Petition ¶ 216. This argument is not well taken.

The Sixth Circuit has rejected the argument that the Ohio statutory scheme is unconstitutionally vague.  *See Cooey*, 289 F.3d at 923.  As noted previously, there is no requirement that the state affirmatively structure in a particular way the manner in which juries consider mitigating evidence, and complete jury discretion is constitutionally permissible.  *Buchanan*, 522 U.S. at 276-77; *Cooey*, 289 F.3d at 924.  The Ohio weighing scheme requiring the weighing of aggravating circumstances against mitigating factors is not unconstitutionally vague.  *Cooey*, 289 F.3d at 927-28 (rejecting argument that Ohio weighing scheme is unconstitutionally vague); *Buell*, 274 F.3d at 367 (Ohio death penalty statute provides the sentencing authority with adequate information and guidance as required by *Gregg*, 428 U.S. at 195, "significantly reduces the likelihood of arbitrary and capricious imposition of the death penalty and does not run afoul of the Constitution."); *Coleman*, 268 F.3d at 442-43 (Ohio statutory scheme for weighing aggravating circumstances against mitigating factors provides specific and detailed guidance required under *Godfrey v. Georgia*, 446 U.S. 420,

428 (1980)).

5.  The Ohio system requires proof of aggravating factors in the trial phase.

Petitioner challenges the fact that in Ohio, the same jury hears and decides both the guilt and the penalty phases, thereby increasing the risk of jury bias and animosity towards the accused. Petitioner asserts that the fact that the Ohio system requires proof of aggravating circumstances at the guilt phase of the trial precludes a sufficiently individualized determination at sentencing. Petition ¶ 217.

Petitioner's argument is foreclosed by the decision of the Supreme Court in *Lowenfield v. Phelps*, 484 U.S. 231 (1988). In that case, the Court noted:

> The use of "aggravating circumstances" is not an end in itself, but a means of genuinely narrowing the class of death-eligible persons and thereby channeling the jury's discretion. We see no reason why this narrowing function may not be performed by jury findings at either the sentencing phase of the trial or the guilt phase.

484 U.S. at 244-45. The Sixth Circuit has indicated its approval of this aspect of Ohio's death penalty scheme. *See Smith*, 348 F.3d at 214; *Coleman*, 268 F.3d at 443.

6.  Under the Ohio system there is an impermissible risk of death to those who exercise the right to a jury trial.

Petitioner asserts that the Ohio scheme poses an impermissible risk of death on defendants who exercise the right to a jury trial. Petition ¶ 218. Petitioner notes the fact that under Ohio Crim.R. 11(C)(3), in a case where the defendant pleads guilty, the trial judge is vested with the discretion to dismiss the death specifications "in the interests of justice." Petitioner argues that this unconstitutionally encourages the waiver of the right to

94

a jury trial, and exposes defendants who exercise the right to a
jury trial to an impermissible risk of the death penalty.

Although the Supreme Court has struck down a statutory
provision where a guilty plea automatically left the defendant
ineligible for the death penalty, *see United States v. Jackson*, 390
U.S. 570 (1968), the Court has never held that it is impermissible
to give a defendant who pleads guilty the possibility of avoiding
the death penalty, since there is no *per se* rule against encouraging
guilty pleas. *See Corbitt v. New Jersey*, 439 U.S. 212, 223 (1978).
Under the Ohio rule, a defendant who pleads guilty to an indictment
containing a death penalty specification is still eligible for the
death penalty. The Sixth Circuit has upheld the provisions of Rule
11(C)(3). *See Wickline v. Mitchell*, 319 F.3d 813, 824 (6th Cir.
2003); *Cooey*, 289 F.3d at 924-25 (petitioner offered no authority
to support claim that Rule 11(C)(3) impermissibly encouraged guilty
pleas in capital cases); *Byrd*, 209 F.3d at 539 (rejecting argument
that Rule 11(C)(3) imposes an impermissible risk of death on capital
defendants who choose to exercise their right to a jury trial).
Rule 11(C)(3) is not unconstitutional.

In accordance with the foregoing, this court concludes that the
Ohio death penalty scheme is not unconstitutional, and that the Ohio
courts did not act contrary to, or unreasonably apply, clearly
established federal law in rejecting petitioner's constitutional
challenges to Ohio's capital punishment scheme. Petitioner is not
entitled to relief on this ground.

**N. Twenty-Second Ground for Relief:**

Petitioner's twenty-second ground for relief is as follows:

When the trial court fails to excuse a prospective juror
whose views on capital punishment would prevent or

substantially impair his ability to consider mitigating factors, and counsel is forced to use a peremptory challenge on said juror, the result is a violation of petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

Petitioner argues that the trial court erred in not granting his challenge for cause of a prospective juror who expressed some reservation about the use of the testimony of psychologists. Prospective juror Milton Murphy was questioned during voir dire concerning the use of the testimony of psychologists to establish mitigating factors:

Q. Would you consider that simply a dodge to avoid responsibility, or would you consider that something that could be used to mitigating factors?

A. I think it could be used either way. Sometimes it's used as dodge, and sometimes it should weigh on the case.

Q. Yes.... Let's say a psychologist gets on the stand and talks about a background and talks about a deprived, what would be considered a deprived background. Would you consider that something that you, would you look at that as something you should consider when determining mitigating factors?

A. I would, yes, it would be something to look at.

Q. Would you, do you think you're likely to ignore it because you don't feel that it's really very important?

A. I don't feel that it is not important, I think sometimes it's used too much.

Q. Okay. Under what circumstances would you say that you think it's used too much?

A. I mean, in just general. I mean, I read about cases, that you know, that they use things like that as an excuse for what has been done, and sometimes I don't think that is right.

JA Vol. IV, pp. 663-64.

96

Mr. Murphy was also questioned about his views on the death penalty:

Q.   Do you feel that the death penalty is the, even if the Judge were to instruct you otherwise, would you feel that the death penalty is the only appropriate penalty if James were to be found guilty of murdering Myrtle Rutledge while committing a robbery or a burglary or both?

A.   I don't think it's the only one, but it's one to consider.

Q.   Do you think it's the better choice, or do you think it's just another choice?

A.   I think it's just another choice.

Q.   Would you give the other two, the life with full 30 and life full 20, would you give that consideration also?

A.   I mean yes, I'd look at them.

Q.   And if the State didn't convince you beyond a reasonable doubt that the aggravated circumstances outweigh the mitigating factors, would you vote for something other than death?

A.   Yes, it they didn't prove to me beyond a reasonable doubt, yes, I could.

Q.   Now, I want to get back to the psychologist again. Because, if we get to that phase, it is likely that the majority, almost vast majority of the Defense presentation will be testimony of that nature.  And, you can see how it would concern me if you just would think that that was whistling in the wind, that it just wasn't worth hearing?

A.   Not that it is not worth hearing, I just, you know, I would be willing to listen, but it seems to me it's used a good bit a lot of the time.

Q.   Do you think your opinion that it's used a good bit a lot of the time to avoid responsibility, would prevent you from giving that testimony the same proper consideration that you give all other testimony?

97

A.  I'm sure I would listen to it and consider it.

Q.  Would you be able to give it the same consideration and look at it under the same rules, as the Court would instruct you, as you would all other testimony?

A.  I think I could try.

Q.  I might be able to try and climb Mt. Everest, but I don't think I could do it.  Other than try, do you, I hate to pressure you on this?

A.  Well, I mean, I am not sure how to answer either, I mean, I could listen and see what they had to say.  But that is just my feeling on it.

* * *

A.  The only thing I could say is I would be willing to listen.  But, you know, my opinion is that I have seem to [have] heard and read that there is a lot of that testimony as an easy way out, to explain what has been done.  Sometimes I don't feel it's all that right.  I mean maybe there is more merit to it than I know.

Q.  Do you think that that opinion would then cause you to be more likely to vote for the death penalty in spite of whatever the Judge's instructions?

A.  Not believing in that as much.

Q.  Yes?

A.  I don't know whether it would or not, make me tend to vote that way more.

* * *

Q.  Would you, in good conscience, be able, under the proper circumstances, if the Judge were to so instruct you to vote for life with parole eligibility after 20 years, assuming James has been convicted of aggravated murder of Myrtle Rutledge with the specification of either aggravated robbery or aggravated burglary or both.  Would you, in good conscience and under the Judge's instruction, be able to vote for life with parole eligibility after 20 years?

98

A.    Oh, it's possible after I've heard, you know.

Q.    Would you be able to vote for life with parole
      eligibility after 30 years?

A.    Well, it's possible too.

JA Vol. IV, pp. 665-69.  Defense counsel then challenged Mr. Murphy

for cause, arguing that his answers indicated that he would be

unable to vote for any sentence other than death.  JA Vol. IV, pp.

669-70.

    The prosecutor questioned Mr. Murphy further.  The prosecutor

commented that it was the state's burden to prove that the

aggravating factors outweighed the mitigating circumstances beyond

a reasonable doubt, and that if the state failed this burden, "then

it's your sworn duty as a juror to recommend either life without

parole eligibility for 30 years, or life without parole eligibility

for 20 years."  JA Vol. IV, pp. 670-71.  He asked Mr. Murphy if he

could and would follow the instructions of the Court with regard to

his duty as a juror in the sentencing phase, and Mr. Murphy replied,

"Yes, I have to, yes."  JA Vol. IV, p. 671.  The prosecutor then

asked:

Q.    And if the aggravated circumstances do not outweigh the
      mitigating factors by proof beyond a reasonable doubt to
      you, that you will recommend to the Judge a sentence not
      of death, but in accordance with the instructions of law
      as given by the Court, either life without parole
      eligibility for 30 years or life without parole
      eligibility for 20 years.  Can you and will you do that?

A.    Yes.

Q.    And when you said a few moments ago that possibly you
      could recommend life with parole eligibility after 20
      years, possibly you could recommend life with parole
      eligibility after 30 years, what did you mean by the word
      possibly?

A.   Well, if you didn't prove, like I said, if the mitigating circumstances tip this way and you didn't prove to me, then you would have to go the other, one of the other, life or 30 or the 20.

Q.   And that possibly, if aggravated circumstances [were] proven to you beyond a reasonable doubt to outweigh the mitigating factors, you would then have to recommend the death penalty?

A.   Yes.

Q.   Can you assure me, can you assure the Court, can you assure the Defense team that you can and will follow the instructions as given to the Judge, if you become a juror on this panel with regard to the sentencing phase and the 3 alternatives that can be recommended, subject to the instructions of the Court that we have just reviewed?

A.   You're asking me if you can?

Q.   Yes, can and will you follow the instructions of the Court?

A.   Yes.

JA Vol. IV, pp. 671-73.  The court then asked Mr. Murphy:

Q.   Okay.  I guess I would only have one question for you. And, I think Mr. Kelly has indicated that if you get to this stage that some of the mitigating factors that he may present would be in the form of a professional who is a psychologist.  And can you consider the testimony of the psychologist, can you sit there and weigh his credibility according [to] the instructions which I would instruct you to?

A.   I could sit there, I mean, I would be willing to listen, yes.

JA Vol. IV, pp. 673-74.  The court then overruled the challenge for cause.  JA Vol. IV, p. 674.  The defense later excused Mr. Murphy with a peremptory challenge.  JA Vol. VIII, p. 1303.

The court of appeals rejected petitioner's argument that the trial court erred in refusing to excuse Mr. Murphy for cause.  The

100

court of appeals noted that under Ohio law, a juror is subject to challenge for cause when he "discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court." Ohio Rev. Code §2313.42(J); *Goff*, 1997 WL 194898 at *15. The court further noted that in a criminal case a juror may be challenged for cause where his answers show that "he is possessed of a state of mind evincing enmity or bias toward the defendant or the state[.]" Ohio Rev. Code §2945.25(B); *Goff*, 1997 WL 194898 at *15. However, no juror "shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied ... that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial[.]" §2945.25(B); *Goff*, 1997 WL 194898 at *15.

The court of appeals further noted that under Ohio law, a trial court's ruling on a challenge for cause will be upheld unless it is manifestly arbitrary and unsupported by substantial testimony, so as to constitute an abuse of discretion, and that an appellate court may not substitute its judgment for that of the trial court, as the trial court has the opportunity to observe the demeanor of the prospective juror and evaluate firsthand the sincerity of the juror's responses. *Id*. at *15-16 (citing *State v. Tyler*, 50 Ohio St.3d 24, 31, 553 N.E.2d 576 (1990) and *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990)). The court of appeals held that the trial judge did not abuse his discretion in refusing to excuse Mr. Murphy for cause, stating:

> While Murphy expressed reservation as to the use in general of psychologists' testimony, he also stated that in this particular case, he would be willing to listen to it and consider it. Murphy further stated that [the]

101

> death penalty was just another choice, that he would
> follow the law and the jury instructions, and that he
> could impose a life sentence if aggravating circumstances
> did not outweigh mitigating factors.  At no time did
> Murphy state he had any preconceived opinion as to
> appellant's guilt or innocence as a result of Murphy's
> reservation about the use of psychologists' testimony at
> trials.

*Id.* at *17-*18.  The Ohio Supreme Court also held that the trial
court did not abuse its discretion by failing to excuse the
prospective juror for cause.  *Goff*, 82 Ohio St.3d at 137-38.

Federal law provides that "the Sixth and Fourteenth Amendments
guarantee a defendant on trial for his life the right to an
impartial jury."  *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988).  Under
federal law, "the proper standard for determining when a prospective
juror may be excused for cause because of his or her views on
capital punishment ... is whether the juror's views would "prevent
or substantially impair the performance of his duties as a juror in
accordance with his instructions and his oath.'"  *Wainwright v. Witt*,
469 U.S. 412, 424 (1985)(quoting *Adams v. Texas*, 448 U.S. 38, 45
(1980)).

The Ohio statutory standard for excusing jurors for cause
applied by the Ohio courts in this case is essentially the same as
the federal standard.  The Ohio courts did not act contrary to, or
unreasonably apply, clearly established federal law in holding that
the trial court acted within its discretion in rejecting
petitioner's challenge for cause.  The record reveals that although
Mr. Murphy had some preconceived views on the value of a
psychologist's testimony, he indicated that he was willing to listen
to and consider such testimony, and that he would return a verdict
recommending a life sentence if the state failed to satisfy its

burden of proof.  He never stated that he would automatically or definitely reject any expert testimony from a psychologist.  He expressed no preconceived opinions concerning petitioner's guilt or innocence.  His statements fail to establish that his views concerning a psychologist's testimony would prevent or substantially impair his performance of his duties as a juror in accordance with the instructions of the court and his oath.  The trial court's failure to excuse Mr. Murphy for cause did not deny petitioner his constitutional right to a fair trial.

In addition, Mr. Murphy was excused by petitioner through the use of a peremptory challenge, and thus he did not sit on the jury. Petitioner argues that he was deprived of his Sixth and Fourteenth Amendment rights because he decided to use a peremptory challenge to excuse this juror.  However, the Supreme Court has held that a defendant who exercises a peremptory challenge to rectify the trial court's error in refusing to excuse a prospective juror who should have been excused for cause is not thereby deprived of an impartial jury or his right to due process.  *Ross*, 487 U.S. at 90-91.

Peremptory challenges are statutory and are not required by the Constitution.  *Id*. at 89.  It is for the state to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise, and any right to peremptory challenges is denied or impaired only if the defendant does not receive that which state law provides.  *Id*.  Where a defendant exercises a peremptory challenge to excuse a juror, the juror in question is "removed from the jury as effectively as if the trial court had excused him for cause."  *Id*. at 86.  Where the juror is excused, any claim that the jury was not impartial must focus not

on the juror who was excused, but on the jurors who ultimately sat. *Id*. at 86. "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." *Id*. at 88. *See also United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000)(where defendant elects to cure judge's error in refusing to excuse juror for cause by exercising a peremptory challenge and is convicted by a jury on which no biased juror sat, he has not been deprived of any rule-based or constitutional right); *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)(petitioner's claim that he was forced to use peremptory challenges to strike three jurors who should have been disqualified for cause did not state a constitutional injury).

Petitioner was permitted to exercise all of the peremptory challenges to which he was entitled under Ohio law. He has not shown that the jurors who served at his trial were not fair and impartial. Petitioner is not entitled to relief on his twenty-second ground for relief.

**O. Twenty-fifth Ground for Relief:**

Petitioner's twenty-fifth ground for relief is as follows:

Prosecutorial misconduct committed throughout the stages of Petitioner Goff's capital trial violated his constitutional rights as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

The branch of this claim which remains for a decision on the merits is contained in paragraphs 266 and 267 of the petition. Petitioner asserts that he was denied a fair trial due to allegedly improper argument by the prosecution which referred to the standards of the community and appealed to the emotions of the jurors. During

104

the penalty phase of the trial, the prosecutor stated during closing arguments:

> I heard this on the radio and it really, really strikes home. I heard an individual on the radio say that juries of today, of which you are one, when they reach their verdicts, when they reach their recommendation of sentencing, as in this case, are setting the standards of behavior acceptable to society, and Ladies and Gentlemen of the Jury, that is true. And the question is, what standard of behavior are you going to set for society as you go back in that Jury Room and deliberate? What is your standard? Is the standard going to be you can kill somebody with no remorse because you want money to go buy crack? Or is the standard going to be, we will not accept that?

JA Vol. XVI, p. 2687. Following this statement, a side bar conference was held off the record. The court then instructed the jury:

> The Court is going to give you an instruction at this time that you are to ignore and disregard any comments that were just made by the State concerning enforcing the standards of behavior acceptable to society. Your job here today is to follow the instruction of the Court and make your decision accordingly.

JA Vol. XVI, pp. 2687-88.

Petitioner argued on appeal that through these comments, the prosecution failed to limit itself to argument solely on the statutory aggravating circumstances. The court of appeals agreed that the statements of the prosecutor concerning public sentiment and public standards of behavior were improper, but noted that the trial court instructed the jury to disregard and ignore those comments immediately after they were made. *Goff*, 1997 WL 194898 at *24. The court referred to the rule that a jury is presumed to follow any curative instructions given by the court, citing *State v. Henderson*, 39 Ohio St.3d 24, 33, 528 N.E.2d 1237 (1988), and

105

found that any prejudice stemming from the comments was cured by the court's instructions. *Id.* The Ohio Supreme Court also held that the comments exceeded the bounds of proper argument, but found no prejudicial error, noting that the jury was instructed to disregard the prosecutor's inappropriate comments, and that the jury was presumed to follow the court's instructions. *Goff*, 82 Ohio St.3d at 135.

This court does not possess supervisory powers over state court trials. *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000). Under the AEDPA, deference must be given to the Ohio Supreme Court's determination of petitioner's prosecutorial misconduct claims. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)("Claims of prosecutorial misconduct are reviewed deferentially on habeas review."); *Macias v. Makowski*, 291 F.3d 447, 453-54 (6th Cir. 2002)(noting that habeas relief is only appropriate if there "was an unreasonable application of clearly established federal law"). In determining whether prosecutorial misconduct mandates habeas relief, the harmless error standard applies. *Lorraine v. Coyle*, 291 F.3d 416, 444 (6th Cir. 2002); *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997). An error is found to be harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

In a habeas proceeding, this court's standard of review is limited to the narrow one of due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the conviction a denial of due process.'" *Id.* (quoting *Donnelly*

*v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  The touchstone of the due process analysis is the fairness of the trial, not the culpability of the prosecutor.  *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993).  "Even if the prosecutor's conduct was improper or even universally condemned, we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair."  *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003).  Habeas relief is appropriate only if the prosecutor's misconduct is "so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant."  *Pritchett*, 117 F.3d at 964.

In order to obtain relief, petitioner "must demonstrate that the prosecution's conduct was both improper and so flagrant as to warrant reversal."  *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005).  *See also Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003).  If this court finds improper conduct, four factors are considered in determining whether the challenged conduct is flagrant: (1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the petitioner; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant.  *Bates*, 402 F.3d at 641; *Millender*, 376 F.3d at 528.  "[R]elief will not be granted unless 'the prosecutor's statement likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt.'"  *Byrd*, 209 F.3d at 529 (quoting *Pritchett*, 117 F.3d at 964.  "Finally, 'each case turns on its own unique facts and ... only a full review will reveal whether a constitutional violation took

107

place.'" *Byrd*, 209 F.3d at 529 (quoting *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982)).

In this case, there is little likelihood that the comments of the prosecutor misled the jury or prejudiced the petitioner. Immediately after the comments were made, the trial court instructed the jury to ignore them.  During the charge in the penalty phase, the court instructed the jury, "You are limited in your consideration solely to your findings in Count 1 and Count 2 relating to the death of Myrtle Rutledge and those aggravating circumstances which you have found to exist." JA Vol. XVI, p. 2714. The trial court instructed the jury concerning the nature of the aggravating circumstances which could be considered, namely, the specifications in Counts 1 and 2 of the indictment. JA Vol. XVI, p. 2715.  The jury was thoroughly informed as to what could be considered as an aggravating circumstance, and was not likely to consider community standards as a nonstatutory aggravating circumstance.  To the extent that the prosecutor's comments could be construed as appealing to the jurors' emotions, the trial court also instructed the jurors that "[y]ou must not be influenced by any consideration of sympathy or prejudice" and that their findings were to be made "with intelligence and impartiality, and without bias, sympathy, or prejudice[.]" JA Vol. XVI, p. 2720.  The jury was also told that the closing arguments of counsel were not evidence, and that "[s]tatements or answers that were stricken by the Court or which you were instructed to disregard also are not evidence and must be treated as though you never heard them."  JA Vol. XVI, p. 2718.  Federal courts generally presume that jurors follow the instructions of the court.  *Hill v. Mitchell*, 400 F.3d 308, 325 (6th

Cir. 2005).

The remarks in question were isolated, not extensive, and were promptly cured by the instructions of the court. The remarks may have been intentionally made, but there is no indication in the record that the prosecutor intended to suggest to the jurors that they improperly consider community standards as a nonstatutory aggravating factor. The evidence against petitioner was strong. Petitioner was not denied a fair trial by reason of the prosecutor's statements.

Even if, in spite of the foregoing, the jury did consider community standards as a nonstatutory aggravating circumstance, consideration of a nonstatutory aggravating circumstance, even if contrary to state law, does not violate the Constitution. *Slagle v. Bagley*, 457 F.3d 501, 521 (6th Cir. 2006); *Smith v. Mitchell*, 348 F.3d 177, 210 (6th Cir. 2003)(citing *Barclay v. Florida*, 463 U.S. 939, 956-58 (1983)). This is particularly true where the Ohio courts properly engaged in the independent weighing of aggravating circumstances and mitigating factors as required by Ohio Rev. Code §§2929.03(D)(3) and 2929.05(A), thereby rendering any error harmless under *Clemons v. Mississippi*, 494 U.S. 738, 741 (1990). *Slagle*, 457 F.3d at 521. Any error arising from the prosecutorial reference to any nonstatutory aggravating circumstance in this case was therefore "devoid of constitutional import." *Id*.

Petitioner has not shown that the prosecutor's comments affected his substantial rights or the fairness of the trial. The decisions of the Ohio courts that the prosecutor's comments did not deny petitioner a fair trial were not contrary to, nor did they involve an unreasonable application of, clearly established federal

law.  Petitioner's twenty-fifth ground for relief is denied.

<u>IV. Conclusion</u>

        In accordance with the foregoing, petitioner's habeas corpus claims are denied, and this action is dismissed.  The clerk is directed to enter judgment dismissing this action.


Date: December 1, 2006          <u>       s\James L. Graham          </u>
                                James L. Graham
                                United States District Judge